# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Noble v. Earle M. Jorgensen Co.*, 2013 IL App (5th) 120248**

| | |
|---|---|
| Appellate Court Caption | BRENDA NOBLE, Plaintiff-Appellee, v. EARLE M. JORGENSEN COMPANY, d/b/a EMJ Metals and The EMJ Company, and MARK McCOLLUM, Defendants-Appellants. |
| District & No. | Fifth District<br>Docket No. 5-12-0248 |
| Filed | May 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the back injury plaintiff suffered in an automobile accident, the trial court did not abuse its discretion in granting plaintiff's motion *in limine* barring evidence regarding plaintiff's prior injuries to her lower back and a subsequent fracture of her lower back, since plaintiff testified that she had not previously suffered any pain in the area of her back that was injured in the automobile accident. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 07-L-250; the Hon. Robert P. LeChien, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Ronald A. Roth, of Roth Law Offices, of Granite City, for appellants.

Mark S. Schuver and William J. Niehoff, both of Mathis, Marifian & Richter, Ltd., of Belleville, for appellee.

Panel

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Stewart and Cates concurred in the judgment and opinion.

## OPINION

¶ 1    This is a negligence action brought in the circuit court of St. Clair County by the plaintiff, Brenda Noble, against the defendants, Earle M. Jorgensen Company, d/b/a EMJ Metals and The EMJ Company (EMJ), and Mark McCollum, for injuries she sustained as a result of an automobile accident. On appeal, the defendants argue that the trial court erred in granting the plaintiff's motion *in limine* barring them from mentioning the plaintiff's prior low back injuries and treatment and a subsequent fracture in her low back following an unknown injury. For the reasons that follow, we affirm the decision of the circuit court.

¶ 2    On May 15, 2007, the plaintiff filed a complaint against the defendants for personal injuries that she sustained in a motor vehicle accident that occurred on June 3, 2005. The plaintiff alleged to have suffered the following injuries as a result of the accident: coccydynia (pain in the coccyx/tailbone); injuries to the sacroiliac joint, or SI joint (joint between the sacrum, which is a bone located above the coccyx, and the ilium, a bone in the pelvis); injuries to the piriformis muscle (muscle in the gluteal region that connects the tailbone to the greater trochanter of the femur); and injuries to the sacrococcygeal disc (located between the sacrum and coccyx).

¶ 3    Before trial, the plaintiff filed a motion *in limine* seeking to prevent the defendants from mentioning any injuries and medical treatment to portions of the plaintiff's body unrelated to the coccyx, sacroiliac joint, and piriformis muscle. Specifically, the plaintiff requested that the defendants be prevented from introducing the following evidence: medical records indicating that the plaintiff sought treatment from Dr. Robert Meinders, a chiropractor, in 1999 through 2003 for spinal-related conditions primarily involving the cervical, thoracic, and lumbar regions of her body; medical records indicating that the plaintiff had been diagnosed with low back pain in 2001 by Dr. Rachel Feinberg, also a chiropractor; medical records and deposition testimony from Dr. Adele Roth, the plaintiff's primary care physician, that she sought treatment for mid to low back pain in March 2005 after suffering a fall; and medical records indicating that a CT scan performed in May 2007 revealed that the plaintiff had suffered an old ununited anterior fracture of the superior end plate of L3 (located in the lower back). The plaintiff moved to bar admission of this evidence on the basis that the

defendants had failed to present any medical or other competent evidence, as required pursuant to *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000), establishing a causal connection between the plaintiff's prior and subsequent medical conditions *and* the injuries that she complained of suffering as a result of the motor vehicle accident.

¶ 4        Thereafter, the defendants filed a response to the plaintiff's motion *in limine*, arguing that the plaintiff's complaint of low back pain could not be solely attributed to the automobile accident. In support of this argument, the defendants point to the following: (1) the plaintiff had sought treatment for chronic low back pain from 1999 until at least a few months before the motor vehicle accident; (2) the plaintiff's medical records indicated that she had complained of mid to low back pain, which felt like a "burning back pain," after suffering a fall in March 2005 and deposition testimony from Dr. Pereira, a pain management specialist who treated the plaintiff following the motor vehicle accident, that pressure on a nerve in the low back or arthritis in the low back could cause a burning pain that could radiate down the leg; (3) a March 2005 X-ray report that indicated the plaintiff had a history of low back pain and pelvic pain and Dr. Pereira's deposition testimony that the pelvic area was in the same region as the sacrum and coccyx; and (4) medical records and deposition testimony indicating that the plaintiff had suffered a fracture to her lower back after the accident, which was revealed in a CT scan performed in May 2007.

¶ 5        The trial court granted the plaintiff's motion, but cautioned that the plaintiff could open the door to the testimony by discussing the general condition of her back as opposed to the more specific condition related to her lower back. In granting the motion, the court stated as follows:

"I do believe that this is the kind of case where the order limiting this type of testimony, the preexisting evidence, is appropriate because I think the doctors make it clear that it's not something for the lay person to sort out and that it is incorrect to–medically to conclude that the preexisting is the cause of or has anything to do with the claimed limited injury."

The unedited versions of the depositions of Dr. Pereira and Dr. Roth were admitted as offers of proof.

¶ 6        The following evidence concerning the plaintiff's injuries was adduced at the five-day jury trial. We will set forth only those facts pertinent to our disposition of the specific issues on appeal.

¶ 7        The plaintiff was driving a Chevrolet minivan north on Route 159 in Belleville, Illinois, on June 3, 2005, when she observed a tractor-trailer stopped at a stop sign on Route 15 at the intersection of Route 15 and Route 159. Defendant Mark McCollum was driving the tractor-trailer for his employer, EMJ. As the plaintiff approached the intersection, she noticed that the tractor-trailer had started rolling forward. She was approximately two to three car lengths from the tractor-trailer when she noticed it moving forward. In an attempt to avoid an accident, the plaintiff "jammed" on her brake with her right foot, swerved, and honked the horn. The tractor-trailer continued to accelerate, and the front end of the tractor-trailer collided with the passenger side of the plaintiff's vehicle.

¶ 8        Following the accident, the plaintiff began feeling pain in her "buttocks area by [her]

waist" that continued to get worse. The plaintiff's husband picked her up from the accident scene and took her to the emergency room at Memorial Hospital in Belleville. A pain diagram indicating that the plaintiff experienced pain in her entire gluteal area, her lower back, the tailbone area, and along the spine to the shoulder blades was part of the emergency room records. Following a physical examination, the plaintiff was prescribed an anti-inflammatory and a muscle relaxant.

¶ 9       On June 6, 2005 (the Monday following the accident), the plaintiff sought treatment from Dr. Adele Roth. Dr. Roth had been the plaintiff's primary care physician since 1998. The plaintiff reported that she was experiencing pain in her left hip, pain in her back, pain in her left leg, pain in her sacroiliac joint, and pain with walking and sitting. During the physical examination, Dr. Roth noticed that the plaintiff's thoracic and lumbar (lower back) areas were abnormal and that she had pain down her left leg and tingling in the lower thoracic and upper lumbar area of the spine (mid to lower back). Dr. Roth diagnosed the plaintiff with lumbar spine strain, left leg paraesthesia, and thoracic strain. Dr. Roth prescribed a muscle relaxer and an anti-inflammatory and ordered an MRI of the thoracic and lumbar spine.

¶ 10      The radiologist report from the MRI indicated that the plaintiff complained of low back pain that radiated down to the left buttock and to the knee. The MRI findings revealed multiple degenerative disc changes and an exaggeration of the normal lumbar lordosis. The MRI did not visualize the coccyx area or the sacroiliac joint area. Dr. Roth prescribed physical therapy and referred the plaintiff to a physiatrist.

¶ 11      The plaintiff attended physical therapy at Metro-East Rehabilitation and Sports Clinic. During her initial visit on June 29, 2005, the plaintiff reported pain with sitting, pain radiating down into her legs, and a burning pain in her left buttock. During a course of treatment of medication and physical therapy, the plaintiff experienced some relief from the pain in her lower back muscles, but the pain in the gluteal region remained.

¶ 12      The plaintiff sought treatment on July 1, 2005, from Dr. Anwar Khan, a physiatrist, as a result of Dr. Roth's referral. The plaintiff reported that she continued to have low back pain and discomfort across her lower and middle back. She also reported that she experienced pain in the left buttock region and had some radiation of the pain over the posterior aspect of the thigh occasionally. The plaintiff further reported increased pain and discomfort with coughing, sneezing, standing, sitting, and driving. During the physical examination, Dr. Khan observed slight soreness around the sciatic notch, soreness in the bilateral sacroiliac joint, and tightness and tenderness in the left piriformis muscle. Dr. Khan explained that these areas were in the vicinity of where the coccyx, the sciatic nerve, the SI joint, and the piriformis muscle come together and would generally be considered the gluteal region of the body. Dr. Khan's diagnosis was left sacroiliac strain with anterior torsion, meaning that the pelvis had shifted forward and twisted. During subsequent visits, Dr. Khan used manipulation techniques to attempt to mobilize the left sacroiliac joint, performed an injection to the left sacroiliac joint, and ordered an X-ray of the sacrum and the coccyx area. Dr. Khan prescribed continued physical therapy focusing on the tailbone area.

¶ 13      The radiologist report from the X-ray of the sacrum and coccyx revealed a probable disruption of the sacrococcygeal disk synchondrosis (breakdown or disruption of the

ligament holding the connection between the sacrum and coccyx) with dorsal coccygeal segment displacement (coccyx was moved backward).

¶ 14    Dr. Roth, who had seen the plaintiff on a regular, ongoing basis following the accident, had referred the plaintiff to Dr. Suada Spirtovic, a pain specialist at the Pain Management Center at Memorial Hospital, because the plaintiff had reported that the manipulation of the tailbone area resulted in an aggravation of her pain. The plaintiff's initial visit with Dr. Spirtovic was September 26, 2005. During the physical examination, Dr. Spirtovic observed that the plaintiff had tenderness in the left sacroiliac joint, tenderness in the sacrococcygeal area, and tenderness in the piriformis muscles, which was worse on the left side. Dr. Spirtovic diagnosed the plaintiff with displacement of the sacrococcygeal disk (disk that connects the sacrum and coccyx) with left sacroiliac joint dysfunction and piriformis muscle syndrome. Dr. Spirtovic continued the anti-inflammatory prescription and continued a series of injections. Throughout the course of treatment, Dr. Spirtovic performed caudal epidural steroid injections (entry point right at the tailbone), a left sacroiliac joint steroid injection, a piriformis muscle steroid injection (injection into the piriformis muscle itself), four trigger point injections (placed directly into the soft tissue in the areas of the plaintiff's reports of pain), and a sacrococcygeal ligament steroid injection. Dr. Spirtovic also prescribed physical therapy with sacral and coccygeal maneuvering. The plaintiff testified that the treatment only provided temporary relief to the pain and she was required to return on a regular basis for ongoing injections and physical therapy.

¶ 15    On March 30, 2007, the plaintiff sought treatment from Dr. Eugene Pereira, a pain management specialist that also worked at the Pain Management Center. Throughout his entire treatment of the plaintiff's injuries, Dr. Pereira focused on treating her tailbone and the sacroiliac joint. Dr. Pereira diagnosed the plaintiff with coccydynia, injury to the sacroiliac joint, and injury to the piriformis muscle. Dr. Pereira explained that the three structures were related and injury to one of the structures could affect the other two structures. He further explained that trauma to one of the structures could result in problems with the other two structures. Throughout the course of treatment, Dr. Pereira administered a series of injections, prescribed continued physical therapy with sacral and coccygeal maneuvering, and ordered internal manipulation of the coccyx.

¶ 16    Dr. Pereira opined that the plaintiff's pain and symptoms in the coccyx and sacroiliac joint were, within a reasonable degree of medical certainty, causally related to the June 2005 motor vehicle accident. He opined that the plaintiff suffered from the following injuries as a result of the accident: soft tissue and joint injuries of the sacrococcygeal junction, injury to the sacroiliac joint, and injury to the musculature attached to the various structures in that region. Dr. Pereira opined that, within a reasonable degree of medical certainty, the disruption and displacement in the coccygeal region was the direct result of the June 2005 motor vehicle accident. He noted that based on his review of the medical records, the plaintiff began experiencing signs and symptoms consistent with a diagnosis of coccydynia within a "very short time" following the motor vehicle accident. However, Dr. Pereira admitted that the primary cause of coccydynia was a blunt force trauma to the coccyx, such as a fall, and that the motor vehicle accident did not involve a blunt force trauma to the coccyx. However, he explained that the motor vehicle accident could have caused dislocation

or torsion of the sacroiliac joint and an injury to the piriformis muscle and then consequential coccydynia could have developed as a result of those injuries.

¶ 17    The plaintiff testified that she had never experienced any pain or symptoms in the coccyx, the piriformis muscle, and the sacroiliac joint areas before the June 2005 motor vehicle accident. She further testified that she had continuously experienced pain in those areas since the accident. Dr. Roth opined that, within a reasonable degree of medical certainty, the plaintiff's pain and symptoms in the gluteal region were the direct result of the June 2005 motor vehicle accident. Dr. Roth testified that the plaintiff had not reported to her any pain and symptoms in the gluteal region, which included the coccyx, sacroiliac joint, and piriformis muscle, before the motor vehicle accident. Instead, the first reports of pain in those areas occurred following the June 2005 accident, and the plaintiff had consistently reported pain in those regions during the course of her treatment.

¶ 18    Peter Anderson, an orthopedic surgeon, performed a physical examination of the plaintiff and reviewed her medical records at the defendants' request. Dr. Anderson reached the conclusion that the plaintiff did not suffer coccydynia as a result of the motor vehicle accident because she had not complained of anything that could be interpreted as coccydynia until almost 10 weeks following the accident. Therefore, Dr. Anderson believed that the plaintiff had developed coccydynia subsequent to the accident. Dr. Anderson explained that he had searched the plaintiff's medical records for any specific complaints concerning the coccyx. He further explained that the plaintiff's complaints of pain in the buttocks, piriformis muscle, and sacroiliac were not diagnostic of coccydynia. Dr. Anderson noted that coccydynia generally resulted from blunt force trauma to the coccyx and that it was improbable that a motor vehicle accident could be the cause of the condition. Dr. Anderson clarified that he did not disagree with the diagnosis of coccydynia; he just believed that the plaintiff's coccydynia was subsequently developed. Dr. Anderson's opinions were limited to the coccydynia issue.

¶ 19    After the evidence was presented, the trial court granted the plaintiff's motion for a directed verdict as to the defendants' negligence. Therefore, the only issues for the jury to consider were whether the defendants' negligence proximately caused the plaintiff's injuries, and if so, the amount of damages that would compensate the plaintiff for her injuries. Thereafter, the jury returned a verdict for the plaintiff and against the defendants, awarding her $576,000 in damages. On March 26, 2012, the defendants filed a motion requesting the trial court vacate the judgment and grant a new trial on the basis that the trial court erred by granting the plaintiff's motion *in limine* barring them from mentioning the plaintiff's prior low back injuries and treatment and the subsequent fracture. On May 16, 2012, the trial court denied the defendants' motion. The defendants appeal.

¶ 20    On appeal, the defendants argue that the trial court erred by preventing them from presenting evidence regarding the plaintiff's prior low back pain and treatment and her subsequent fracture in the low back on the basis that the defendants had failed to present expert evidence establishing a causal connection between the injuries to the low back and the injuries to her coccyx, sacroiliac joint, and piriformis muscle. The defendants argue that the excluded testimony from the depositions of Dr. Anderson and Dr. Pereira established the causal connection between the injuries and, therefore, they were not required to present

further expert testimony on the issue.

¶ 21    A trial court's denial of a motion *in limine* is reviewed under an abuse-of-discretion standard. *Ford v. Grizzle*, 398 Ill. App. 3d 639, 646 (2010). In *Voykin*, 192 Ill. 2d at 59, the Illinois Supreme Court concluded that when a defendant seeks to introduce evidence of a plaintiff's prior injuries or medical conditions at trial, the defendant must first introduce expert evidence demonstrating why the prior injury or medical condition is relevant to causation, damages, or some other issue of consequence. The defendant *must* present medical or other competent evidence to establish a causal connection between the evidence offered and the complained-of injuries. *Ford*, 398 Ill. App. 3d at 646.

¶ 22    Here, the plaintiff claimed that she had suffered injuries to the following areas of her body as a result of the motor vehicle accident: coccyx, piriformis muscle, and sacroiliac joint. The defendants sought to introduce evidence that she was treated for pain in her low back and pelvic area from 1999 until shortly before the motor vehicle accident and that she had suffered a subsequent fracture in her low back (the L3 vertebra). The defendants sought to present the following evidence indicating that the plaintiff had suffered these injuries to her low back: medical records indicating that the plaintiff sought treatment from Dr. Robert Meinders, a chiropractor, in 1999 through 2003 for spinal-related conditions primarily involving the cervical, thoracic, and lumbar regions of her body; medical records indicating that the plaintiff had been diagnosed with low back pain in 2001 by Dr. Rachel Feinberg, also a chiropractor; medical records and deposition testimony from Dr. Adele Roth, the plaintiff's primary care physician, that she sought treatment for mid to low back pain in March 2005 after suffering a fall; and medical records indicating that a CT scan performed on May 9, 2007, revealed that the plaintiff had suffered an old ununited anterior fracture of the superior end plate of L3 (located in the lower back).

¶ 23    The defendants argue that the excluded deposition testimony of Dr. Anderson and Dr. Pereira revealed the extent of the plaintiff's low back injuries and the treatment that she had received for those injuries and established a causal connection between the plaintiff's low back injuries and the injuries to her coccyx, sacroiliac joint, and piriformis muscle. Therefore, the defendants argue that sufficient expert testimony was presented to causally connect the injuries.

¶ 24    The defendants note that Dr. Anderson testified that the plaintiff's back pain preexisted the motor vehicle accident and was aggravated by the accident. The defendants further note that Dr. Pereira testified that the plaintiff had a history of low back pain and pelvic pain and that the pelvic area was in the same region as the sacrum and coccyx. Additionally, the plaintiff's medical records revealed that she had complained of mid to low back pain, which felt like a "burning back pain," after suffering a fall in March 2005 and that Dr. Pereira had testified that pressure on a nerve in the low back or arthritis in the low back could cause a burning pain that could radiate down the leg. The plaintiff had also suffered a fracture to her low back after the motor vehicle accident.

¶ 25    With regard to Dr. Anderson's testimony, we find that his testimony regarding the plaintiff's low back pain preexisting the date of the accident did not establish a causal connection between the injuries to the coccyx, piriformis muscle, and sacroiliac joint and the

plaintiff's complaints of low back pain and her subsequent fracture. We again note that the plaintiff had only alleged injuries to her coccyx, piriformis muscle, and sacroiliac joint during the trial and never claimed that she had injured or aggravated her previous low back pain as a result of the accident. Further, we note that Dr. Anderson's testimony and his written report revealed that he had believed that the plaintiff's coccygeal pain was unrelated to the motor vehicle accident and that it was subsequently developed because his review of her medical records indicated that the pain did not manifest until almost 10 weeks after the accident. With regard to Dr. Pereira's testimony, we note that Dr. Pereira testified that the plaintiff's medical records prior to the motor vehicle accident contained no reference to injuries to the gluteal region as a result of her fall in March 2005. Dr. Roth, the plaintiff's family physician, testified that there was no correlation between the plaintiff's complaints of low back pain following her fall in March 2005 and her complaints of pain to the coccyx, sacroiliac joint, and piriformis muscle following the motor vehicle accident. Further, Dr. Pereira testified that there was no correlation between the finding that the plaintiff had suffered a fracture after the motor vehicle accident and her complaints of pain to the coccyx, sacroiliac joint, and piriformis muscle. Dr. Pereira noted that the fracture to the low back was 8 to 10 inches from the area treated as a result of the motor vehicle accident and opined that the findings localized the pain to the lower back and not in the tailbone and gluteal region. Therefore, we do not believe that sufficient expert testimony was presented to establish a causal connection between the plaintiff's injuries to her low back and her subsequent fracture and the injuries to her coccyx, sacroiliac joint, and piriformis muscle.

¶ 26    The defendants further argue that they were not required to present expert testimony establishing a causal connection because the plaintiff's injuries were such that a layperson could readily appraise the connection without expert assistance.

¶ 27    Expert testimony is not required in instances in which the trial court has determined that a layperson can readily appraise the relationship between the injuries without expert assistance. *Voykin*, 192 Ill. 2d at 59. In *Felber v. London*, 346 Ill. App. 3d 188, 193 (2004), the Second District concluded that the trial court did not abuse its discretion in allowing the defendant to introduce evidence of the plaintiff's preexisting injuries, *i.e.*, neck pain, because the evidence in the case was such that the jurors could readily appraise the relationship between the preexisting injuries to the neck and the neck pain following the accident without additional expert assistance and that the plaintiff and her treating physician had presented specific testimony regarding the extent of the preexisting injuries and symptoms, the treatments that she had received, and the relationship between preexisting conditions and the symptoms she had experienced following the accident.

¶ 28    In the present case, we do not believe that the plaintiff's injuries were such that a layperson could readily appraise the relationship between injuries located in the low back and injuries to the coccyx, piriformis muscle, and sacroiliac joint. We note that during the course of a five-day trial, detailed expert medical testimony and anatomical drawings were presented in an effort to educate the jurors as to the location of the specific areas of the injuries and the nature and description of the various diagnoses involved. Consequently, we do not believe that the exception set forth in *Voykin* applies in this case.

¶ 29    Last, the defendants argue that the plaintiff opened the door, during her testimony, to the

excluded testimony regarding her previous low back pain and subsequent fracture. Specifically, the defendants point to the plaintiff's testimony, during cross-examination, where she testified that she had developed low back pain shortly after the motor vehicle accident. She explained that the pain started "in the buttocks area and worked its way upward." When asked whether she used the term "lower back" to describe her pain in the emergency room, she admitted that she had and that her low back included her buttocks. Therefore, the defendants argue that the plaintiff opened the door to the excluded testimony because she had testified that she considered her gluteal area part of her lower back. The defendants rely on *Janky v. Perry*, 343 Ill. App. 3d 230 (2003), in support of their position.

¶ 30     In *Janky*, 343 Ill. App. 3d at 234, the Third District concluded that the rule established in *Voykin* did not apply because the plaintiff's attorney initially introduced the subject of the plaintiff's preexisting condition, *i.e.*, a shoulder injury, during direct examination. The plaintiff's attorney had also presented testimony from the plaintiff's treating physician stating that the plaintiff had sought medical attention for her prior shoulder injury and that the present shoulder condition predated the car accident. *Id.* at 235. Therefore, the court concluded that the trial court did not abuse its discretion by allowing the defendant's attorney to question the plaintiff concerning previously seeking medical attention for her shoulder injury because her attorney opened the door on the subject of the preexisting injury and subsequently introduced testimony from the treating physician concerning the injury. *Id.*

¶ 31     As a consequence of the plaintiff's testimony in the present case, the defendants wanted an opportunity to show that the plaintiff's pain in her coccyx, sacroiliac joint, and piriformis muscle preexisted the motor vehicle accident. However, the plaintiff had testified that she had never experienced pain or symptoms in the coccyx area, the sacroiliac joint, or the piriformis muscle. Her primary care physician since 1998 confirmed that the plaintiff had never experienced pain and symptoms in these areas. The plaintiff's medical records consistently recorded reports of pain in the gluteal area following the motor vehicle accident. Dr. Roth and Dr. Pereira both opined that the plaintiff's injuries to her coccyx, sacroiliac joint, and piriformis muscle were the result of the motor vehicle accident. Dr. Anderson, the defendants' expert, testified that he believed that the plaintiff developed coccydynia *after* the motor vehicle accident. Therefore, we do not believe that the plaintiff's comment regarding her buttocks being a part of her low back opened the door for the defendants to present medical records and testimony concerning previous complaints of low back pain being an indication that the plaintiff had suffered from pain in her coccyx, sacroiliac joint, and piriformis muscle before the motor vehicle accident. Therefore, we find that the trial court did not abuse its discretion by granting the plaintiff's motion *in limine*. For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

¶ 32     Affirmed.