NOTICE
Decision filed 07/10/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170148

NO. 5-17-0148

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| STEVEN CAMPBELL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-L-1904 |
| | ) | |
| KEVIN AUTENRIEB, | ) | Honorable |
| | ) | William A. Mudge, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Barberis and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1   This appeal stems from a two-count complaint brought by plaintiff, Steven Campbell, to recover damages caused by the alleged strict liability and negligence of defendant, Kevin Autenrieb, in failing to keep his dog under control. Plaintiff's action ultimately proceeded to a jury trial, where the trial court directed a verdict on liability in favor of plaintiff and against defendant at the close of all evidence. The jury returned a verdict of $16,000 in damages in favor of plaintiff and against defendant. On appeal, plaintiff argues (1) the trial court erred in admitting certain medical testimony regarding potential alternative causes of plaintiff's injuries and (2) the jury's award of damages was against the manifest weight of the evidence. For the following reasons, we reverse and remand this cause for further proceedings consistent with this opinion.

1

¶ 2                                   BACKGROUND

¶ 3    The following pertinent testimony was adduced at trial. We limit our discussion to the evidence necessary to provide context.

¶ 4                             A. Plaintiff's Testimony

¶ 5    Plaintiff testified that on July 18, 2012, while he was working for his employer, United Parcel Service (UPS), an unleashed dog owned by defendant lunged at plaintiff and "knocked [him] back." Plaintiff injured his back as a result of the incident. Thereafter, plaintiff went to Midwest Occupational Medicine to receive medical treatment. Plaintiff did not finish his work shift that day.

¶ 6    Plaintiff returned to Midwest Occupational Medicine eight days after the incident and reported he was feeling much better, which plaintiff attributed to the medicine he was taking. Plaintiff volunteered to take vacation time off work during this period "to give [himself] every opportunity to get rid of the pain." Plaintiff testified he was working again by late July or early August 2012 but was not performing his regular duties.

¶ 7    Plaintiff again returned to Midwest Occupational Medicine in September 2012 due to recurring back pain. Plaintiff eventually consulted a specialist, Dr. Kennedy, in November 2012. Dr. Kennedy prescribed plaintiff physical therapy and injections. Plaintiff testified he followed all of Dr. Kennedy's instructions. The last day plaintiff was treated by Dr. Kennedy was March 18, 2016.

¶ 8    Plaintiff testified he missed time from work between July 2012 and September 2015. In July 2014, UPS instructed plaintiff to see Dr. DeGrange, who ordered plaintiff back to work after conducting an examination. Plaintiff testified he was not working prior to being examined by Dr. DeGrange. When plaintiff returned to work, he had not completed all of the physical therapy

2

prescribed by Dr. Kennedy. Plaintiff worked for a couple weeks following his appointment with Dr. DeGrange before injuring his back while moving a deer stand for UPS. Plaintiff subsequently took a leave of absence from work and went to see Dr. Kennedy, who recommended physical therapy and conservative treatment. Plaintiff returned to work in September 2015.

¶ 9 Plaintiff testified that from September 2012 until the present day, "[t]here isn't a day that goes by that I don't have pain." Plaintiff described his pain as a serious bruise in his back and testified he has pain which radiates down his leg. Plaintiff stated he is able to function on some days with medication and struggles on other days. Plaintiff testified he had incurred $200,000 in lost wages since the incident. Plaintiff further testified he no longer vacations and was forced to sell his motorcycle, boat, and camper as a result of the incident.

¶ 10 On cross-examination, plaintiff was impeached based on an incorrect discovery response to a question regarding whether plaintiff was able to return to work following the incident. Plaintiff responded he was unable to return to work and had not returned to work since the incident, when in fact plaintiff had worked for a period of time following the incident. Plaintiff conceded UPS records showed plaintiff engaged in work activity from August 2012 to April 2013. Plaintiff also testified that on the day of the incident, he experienced unbearable pain which he essentially marked as a "ten out of ten pain." When plaintiff returned to Midwest Occupational Medicine the day after the incident, however, he testified he marked his pain level as a 3 or 4 out of 10.

¶ 11 Further evidence adduced on cross-examination showed the physicians who treated plaintiff at Midwest Occupational Medicine following the incident did not recommend that plaintiff be taken off work. From April 2013, when plaintiff took a leave of absence from work, until August 2014, plaintiff testified the only treatment he received was from Dr. Kennedy. Also

3

on cross-examination, plaintiff testified he did not work from October 29, 2014, until September 21, 2015, following an incident in which he was injured while moving a deer stand at work. Plaintiff testified he did not agree that it was common for individuals in his employment position to have bad backs. Plaintiff conceded that no physician had placed any type of restriction on him at the time of trial.

¶ 12                                    B. Dr. Kennedy's Testimony

¶ 13    Plaintiff presented deposition testimony from Dr. Kennedy, a board-certified neurosurgeon who initially treated plaintiff on November 28, 2012. After performing a physical examination on plaintiff, Dr. Kennedy testified the most notable findings were that plaintiff had significant limitation in the range of motion of his back and plaintiff's ability to bend forward was significantly reduced. Dr. Kennedy recommended physical therapy in addition to injections into the areas of particular tenderness in the muscle groups. Dr. Kennedy continued to treat plaintiff until early 2016. Dr. Kennedy testified that an MRI conducted early in plaintiff's treatment showed bulging discs and an annular fissure. Dr. Kennedy testified it was evident from the MRI that plaintiff's annulus had been injured, which he opined was likely a result of the dog incident.

¶ 14    Dr. Kennedy further testified he was aware of an examination of plaintiff performed by Dr. DeGrange in 2014 that recommended plaintiff return to work without restrictions. Dr. Kennedy testified that Dr. DeGrange's opinion about plaintiff's ability to return to work was very different from his opinion, which concluded plaintiff was not ready to return to work. Dr. Kennedy also testified regarding the incident in which plaintiff injured his back on October 29, 2014, as he was delivering a deer stand. Dr. Kennedy opined this event was not a new injury but an aggravation of his prior injury. Dr. Kennedy opined that because plaintiff "never really fully

4

recovered" from his prior injury, he was "vulnerable to events that otherwise might not bother him."

¶ 15    Dr. Kennedy testified he last saw plaintiff in March 2016. At that time, Kennedy testified plaintiff was generally able to function but was not symptom-free and experienced aching pains. Kennedy opined plaintiff was not medically able to work for UPS without restrictions from July 18, 2012, the date of the dog incident, until he released plaintiff to return to work in September 2015.

¶ 16                              C. Dr. DeGrange's Testimony

¶ 17    Defendant presented deposition testimony from Dr. DeGrange, a board-certified doctor who first examined plaintiff in July 2014 at the request of plaintiff's employer, UPS. Dr. DeGrange testified plaintiff had a chief complaint of low back pain, and the symptoms were present on a daily basis. He identified plaintiff's complaint to be at the lumbosacral area. Dr. DeGrange characterized the symptoms as "frequently mild, meaning they were definitely there and noticeable and occasionally moderate causing significant problems with activities either professionally or of daily living." Dr. DeGrange's physical examination of plaintiff concluded he did not look particularly uncomfortable and he did not have acute distress. Dr. DeGrange opined the diagnosis of plaintiff's injury was a lumbar strain. Dr. DeGrange opined plaintiff reached maximum medical improvement by July 26, 2012, which was eight days after the dog incident, and plaintiff did not need any additional medical treatment thereafter. Dr. DeGrange further opined the dog incident may have aggravated plaintiff's preexisting degeneration and plaintiff had no permanent injury to his low back as a result of the dog incident. Dr. DeGrange testified that after seeing plaintiff in July 2014, he did not place any restrictions on plaintiff's activities and released plaintiff to return to work.

5

¶ 18    Dr. DeGrange also testified he examined plaintiff a second time in February 2015 following the incident in which plaintiff injured himself while moving a deer stand for UPS. Dr. DeGrange's second examination concluded plaintiff sustained a lumbar strain and plaintiff had symptoms of a radiculopathy that involved his right leg. Dr. DeGrange opined that none of the symptoms or findings he made on his second evaluation of plaintiff were related to the dog incident.

¶ 19            D. Cross-Examination Testimony Admitted Over Plaintiff's Objection

¶ 20    During trial, plaintiff sought to exclude certain cross-examination testimony that defense counsel elicited from Dr. Kennedy regarding potential alternative causes of plaintiff's injuries, arguing the testimony was not offered to a reasonable degree of medical certainty. Plaintiff alleged the testimony was prohibited under our supreme court decision in *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000). The trial court admitted the testimony on the basis that (1) it was elicited on cross-examination as opposed to direct examination and (2) it pertained to potential alternate or subsequent causes of plaintiff's injuries rather than a preexisting condition. The evidence admitted over plaintiff's objection was Dr. Kennedy's deposition testimony:

    "[COUNSEL FOR DEFENDANT]: Okay. Sometimes people's back will just go out for no reason; would you agree with that.

    [DR. KENNEDY]: Yes.

    Q. They call it an idiopathic cause?

    A. Right.

                                    * * *

Q. And the annular fissure, we talked about that. That could be caused—You mentioned it could be caused by an incident like he described to you with the dog, but it could be caused by many other factors; would you agree?

A. Possible.

Q. Lifting, twisting, any kind of daily activities involving those type of events?

A. Well, I think as a general proposition that's possible, yes."

¶ 21                                        E. Jury Verdict

¶ 22    At the close of all evidence, plaintiff moved for a directed verdict on liability, which the trial court granted. Following deliberations, the jury returned a verdict of $16,000 in favor of plaintiff and against defendant. Specifically, the jury awarded plaintiff: $6000 for loss of a normal life experienced and reasonably certain to be experienced in the future; $6000 for the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries; and $4000 for the value of time, earnings, salaries, and benefits lost, and the present cash value of the time, earnings, salaries, and benefits reasonably certain to be lost in the future. Plaintiff subsequently filed a motion for a new trial on damages, which the trial court denied.

¶ 23    This appeal followed.

¶ 24                                        ANALYSIS

¶ 25    Plaintiff first alleges the trial court committed prejudicial error in admitting speculative testimony regarding potential alternative causes of plaintiff's injuries and pain and suffering. Conversely, defendant contends the trial court did not commit prejudicial error in admitting foundation and/or background testimony regarding general potential causes for plaintiff's injuries and plaintiff's pain and suffering.

7

¶ 26 Evidentiary rulings, including whether to allow an expert to present certain opinions, are within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse of discretion. *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007); *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 36-37 (2010). This is the most deferential standard of review recognized by law, and a reviewing court's mere disagreement with the trial court's decision is not enough to make the decision an abuse of discretion. *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 121. Rather, a trial court abuses its discretion only if it acts arbitrarily without the employment of conscientious judgment, exceeds the bounds of reason and disregards recognized principles of law, or if no reasonable person would take the position adopted by the trial court. *Myrick v. Union Pacific R.R. Co.*, 2017 IL App (1st) 161023, ¶ 21. If the trial court's decision rests on an error of law, "then it is clear that an abuse of discretion has occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the law." *Thompson v. Gordon*, 356 Ill. App. 3d 447, 461 (2005).

¶ 27 Here, plaintiff argues the trial court improperly admitted the following deposition testimony elicited from Dr. Kennedy by defense counsel on cross-examination:

"[COUNSEL FOR DEFENDANT]: Okay. Sometimes people's back will just go out for no reason; would you agree with that.

[DR. KENNEDY]: Yes.

Q. They call it an idiopathic cause?

A. Right.

* * *

Q. And the annular fissure, we talked about that. That could be caused—You mentioned it could be caused by an incident like he described to you with the dog, but it could be caused by many other factors; would you agree?

A. Possible.

Q. Lifting, twisting, any kind of daily activities involving those type of events?

A. Well, I think as a general proposition that's possible, yes."

¶ 28 The parties agree the court admitted this testimony on the basis that (1) it was elicited on cross-examination as opposed to direct examination and (2) it pertained to potential alternate or subsequent causes of plaintiff's injuries rather than a preexisting condition. However, plaintiff contends the trial court erred in admitting this evidence because testimony such as "[s]ometimes people's back will just go out for no reason," it is possible an annular fissure "could be caused by many other factors," and plaintiff's injuries could have been caused by "[l]ifting, twisting, any kind of daily activities involving those type of events" is the type of speculative testimony our supreme court in *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000), held to be inadmissible because it allows the jury to make medical assessments based on conjecture.

¶ 29 In *Voykin*, the plaintiff sustained injuries to his neck and back in an automobile accident caused by the defendant. *Voykin*, 192 Ill. 2d at 51. At trial, the defendant sought to introduce evidence of a lower back injury the plaintiff had suffered approximately five years before the accident. *Voykin*, 192 Ill. 2d at 52. The trial court admitted the evidence, but the appellate court reversed and remanded for a new trial after concluding evidence of prior injuries should not be admitted unless the defendant presents evidence of causation between the prior and present injuries. *Voykin*, 192 Ill. 2d at 52-53. The defendant's petition for leave to appeal was subsequently granted. *Voykin*, 192 Ill. 2d at 53.

9

¶ 30    Our supreme court affirmed the appellate court's reversal, holding that when a defendant seeks to introduce evidence of a plaintiff's prior injury or medical condition at trial, the defendant must first introduce expert evidence showing why the prior injury or medical condition is relevant to causation, damages, or some other issue of consequence. *Voykin*, 192 Ill. 2d at 59; *Noble v. Earle M. Jorgensen Co.*, 2013 IL App (5th) 120248, ¶ 21. The *Voykin* court further concluded there is an exception to the requirement for expert testimony, which arises when the trial court determines a "lay person can readily appraise the relationship" between the plaintiff's prior and current injuries without expert assistance. *Voykin*, 192 Ill. 2d at 59.

¶ 31    In reaching its decision, our supreme court rejected the evidentiary rule known as "the same part of the body rule," which had provided: "[I]f a plaintiff has previously suffered an injury to the same part of the body, then that previous injury is automatically relevant to the present injury simply because it affected the same part of the body." *Voykin*, 192 Ill. 2d at 57; *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 536 (2003). The *Voykin* court characterized "the same part of the body rule" as "nothing more than a bright-line relevancy standard" and criticized the automatic relevancy basis of the rule. *Voykin*, 192 Ill. 2d at 57; *DiCosola*, 342 Ill. App. 3d at 536. As the court observed, " ' "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." ' [Citation.]" *Voykin*, 192 Ill. 2d at 57; *DiCosola*, 342 Ill. App. 3d at 536.

¶ 32    Illinois courts have since extended the *Voykin* holding to evidence of subsequent injuries in addition to prior injuries. In *Caliban v. Patel*, 322 Ill. App. 3d 251, 256 (2001), a motorist brought a negligence action to recover damages sustained in an automobile accident. On appeal, the plaintiff argued the trial court erred in denying his motion *in limine*, which sought to prevent the defendant from introducing evidence or argument concerning plaintiff's prior and subsequent

10

injuries and medical conditions. *Caliban*, 322 Ill. App. 3d at 253. Citing *Voykin*, the court concluded the trial court erred when it allowed the introduction of evidence regarding a subsequent injury without requiring the defendant to offer relevant, supporting expert testimony. *Caliban*, 322 Ill. App. 3d at 256.

¶ 33    In *Obszanski v. Foster Wheeler Construction, Inc.*, 328 Ill. App. 3d 550, 559 (2002), the court relied on *Voykin* in concluding the introduction of evidence on cross-examination concerning an ironworker's subsequent injury without any supporting expert testimony was error. As the court observed:

> "This type of questioning by defense counsel without expert testimony could be prejudicial and in conflict with the *Voykin* decision. With an appropriate foundation laid by a medical expert, if that could be done, defense counsel should be allowed to show that the subsequent injury is a 'cause' of plaintiff's current complaint. This is difficult because the injury in question is claimed to be permanent in nature. If medical evidence can show enhanced or separate pain from the subsequent injury, then the jury should hear it. If not, then it should not come in at all." *Obszanski*, 328 Ill. App. 3d at 560.

¶ 34    In light of the foregoing, it is clear *Voykin* applies to testimony elicited on cross-examination and to subsequent injuries in addition to prior injuries. That being said, we are unaware of any decision by this court that has resolved the specific question presented to us, which is essentially whether the trial court erred in admitting expert testimony regarding unsupported, potential alternative causes of plaintiff's injuries. Although we are unaware of any decision that has resolved this specific issue, we find the reasoning of *Voykin* as it pertains to evidence of prior and subsequent injuries applies to unsupported evidence of phantom causes of injuries.

11

¶ 35    As previously stated, defense counsel in this case elicited testimony from Dr. Kennedy regarding potential alternative causes of plaintiff's injuries, including that "[s]ometimes people's back will just go out for no reason," plaintiff's annular fissure "could be caused by many other factors," and plaintiff's annular fissure could be caused by "[l]ifting, twisting, any kind of daily activities involving those type of events." The record shows defense counsel failed to provide any medical testimony or other competent evidence establishing a causal link between the phantom causes of injuries suggested and plaintiff's present injuries complained of as a result of the dog incident. Moreover, Dr. Kennedy later dismissed the possibility that plaintiff's injuries were incurred as a result of an alternative phantom cause:

"[COUNSEL FOR PLAINTIFF]: Okay. Just so the record is clear, you were asked if other events could have caused this kind of injury. Has anyone provided you with a record, a statement, a history, a video, anything suggesting there was an event, other than the dog attack in July of 2012, that caused [plaintiff's] low back pain?

[DR. KENNEDY]: No, there was no other event in this case. The question was regarding potential. But in actuality there was no other injury that [plaintiff] suffered that I know of."

¶ 36    Dr. Kennedy's hypothetical testimony elicited from defense counsel invited the jury to speculate about unsubstantiated causes of plaintiff's injuries, which is precisely the type of speculative testimony *Voykin* guarded against. As this court has explained, the rationale for requiring a defendant to present expert testimony showing why a separate injury is relevant to causation is "to avoid what amount[s] to the jury forming medical opinions." *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1008 (2003). Nothing from Dr. Kennedy's testimony regarding potential alternative causes of plaintiff's injuries demonstrates why the phantom

12

causes are relevant under the *Voykin* standard. For these reasons, we find the trial court abused its discretion in admitting this testimony.

¶ 37 Lending support to our conclusion are two decisions decided by this court: *Hawkes*, 336 Ill. App. 3d 994, and *Noble*, 2013 IL App (5th) 120248. In *Hawkes*, a patron brought a premises liability action against the owner of a casino after he tripped and fell in the casino's restroom, sustaining injuries to his head, neck, and back. Shortly before the trial, the plaintiff submitted a motion *in limine* seeking to bar the defendant from mentioning or referring to prior neck injuries and related treatment the plaintiff received prior to his fall. *Hawkes*, 336 Ill. App. 3d at 999. Relying on *Voykin*, the plaintiff's motion sought to prevent the defendant from suggesting the plaintiff's injuries were a result of a preexisting condition involving his neck. *Hawkes*, 336 Ill. App. 3d at 999. The trial court granted the plaintiff's motion and barred the defendant from mentioning the plaintiff's prior neck injuries and treatment, as well as any opinions or cross-examination regarding whether the plaintiff had a prior bulging disc in his cervical area. *Hawkes*, 336 Ill. App. 3d at 999. On appeal, the defendant argued the court erred in granting the plaintiff's motion. *Hawkes*, 336 Ill. App. 3d at 1005.

¶ 38 This court affirmed the exclusion of evidence of the plaintiff's prior conditions. Regarding the defendant's expert testimony attempting to establish the plaintiff suffered from a preexisting condition, namely a disc bulge, this court concluded said testimony did not negate the cause of the plaintiff's fall or the resulting injuries. *Hawkes*, 336 Ill. App. 3d at 1006. This court further concluded "the fact that plaintiff's prior injuries *could have* caused a disc to bulge in his neck does not make it less likely that defendant's actions caused *any* of plaintiff's injury." (Emphases in original.) *Hawkes*, 336 Ill. App. 3d at 1006.

13

¶ 39    The *Hawkes* court also rejected the defendant's expert testimony elicited on cross-examination that allegedly showed the plaintiff was symptomatic at his C5 vertebrae prior to his fall and the disc injury for which the plaintiff received surgery was caused by something other than the fall. *Hawkes*, 336 Ill. App. 3d at 1007. The court concluded that neither of the experts' testimony, when taken alone, demonstrated why the prior injury was relevant under the *Voykin* standard. *Hawkes*, 336 Ill. App. 3d at 1008. The court found the experts' testimony amounted to little more than supposition and conjecture. *Hawkes*, 336 Ill. App. 3d at 1008. The court stated that the essential next step of assessing the relationship between the prior injury and the present injury from the experts' testimony would be left to the jury, which "is exactly what the *Voykin* decision guarded against." *Hawkes*, 336 Ill. App. 3d at 1007-08. As this court explained, "In order to avoid what amounted to the jury forming medical opinions, the Illinois Supreme Court has instructed that a defendant bears the burden of 'introduc[ing] expert evidence demonstrating *why* the prior injury is relevant to causation, damages, or some other issue of consequence.' (Emphasis added.)" *Hawkes*, 336 Ill. App. 3d at 1008 (quoting *Voykin*, 192 Ill. 2d at 59). Accordingly, this court affirmed the exclusion of such evidence.

¶ 40    In *Noble*, the plaintiff brought a negligence action against the defendant and his employer, seeking damages for injuries allegedly sustained to her coccyx, piriformis muscle, and sacroiliac joint in a motor vehicle accident. *Noble*, 2013 IL App (5th) 120248, ¶¶ 1-2. The defendants sought to present evidence showing the plaintiff was treated for pain in her low back and pelvic area prior to the motor vehicle accident and that she suffered a subsequent fracture in her low back. *Noble*, 2013 IL App (5th) 120248, ¶ 22. Prior to trial, the plaintiff filed a motion *in limine* seeking to prevent the defendants from referencing any injuries and medical treatment to portions of the plaintiff's body unrelated to the coccyx, sacroiliac joint, and piriformis muscle.

14

*Noble*, 2013 IL App (5th) 120248, ¶ 3. The plaintiff asserted this evidence should be barred on the basis that the defendants failed to present any medical or other competent evidence establishing a causal connection between the plaintiff's prior and subsequent medical conditions and the injuries she alleged to have suffered as a result of the accident, as required by *Voykin*. *Noble*, 2013 IL App (5th) 120248, ¶ 3. The trial court granted the plaintiff's motion *in limine*, barring the defendants from mentioning the plaintiff's prior low back injuries and treatment and her subsequent fracture. *Noble*, 2013 IL App (5th) 120248, ¶ 19.

¶ 41    On appeal, the defendants alleged the court erred by preventing them from introducing evidence regarding the plaintiff's prior low back pain and treatment and her subsequent fracture in her low back on the basis that the defendants failed to introduce expert testimony establishing a causal connection between the injuries to the plaintiff's low back and the injuries to her coccyx, sacroiliac joint, and piriformis muscle. *Noble*, 2013 IL App (5th) 120248, ¶ 20. The defendants argued the excluded deposition testimony of two doctors, Dr. Anderson and Dr. Pereira, established the causal connection between the injuries and, therefore, the defendants were not required to present further expert testimony on the issue. *Noble*, 2013 IL App (5th) 120248, ¶ 20.

¶ 42    Relying on *Voykin*, this court affirmed the exclusion of evidence regarding the plaintiff's prior low back pain and her subsequent fracture. As this court observed:

"In *Voykin* [citation], the Illinois Supreme Court concluded that when a defendant seeks to introduce evidence of a plaintiff's prior injuries or medical conditions at trial, the defendant must first introduce expert evidence demonstrating why the prior injury or medical condition is relevant to causation, damages, or some other issue of consequence. The defendant *must* present medical or other competent evidence to establish a causal

15

connection between the evidence offered and the complained-of injuries." (Emphasis in original.) *Noble*, 2013 IL App (5th) 120248, ¶ 21.

¶ 43 This court found that Dr. Anderson's testimony regarding the plaintiff's low back pain preexisting the date of the accident did not establish a causal connection between the injuries to her coccyx, piriformis muscle, and sacroiliac joint and the plaintiff's complaints of low back pain and her subsequent fracture. *Noble*, 2013 IL App (5th) 120248, ¶ 25. As this court noted, the plaintiff only alleged injuries to her coccyx, piriformis muscle, and sacroiliac joint during the trial and never alleged she aggravated her previous low back pain as a result of the accident. *Noble*, 2013 IL App (5th) 120248, ¶ 25. This court further noted that Dr. Pereira testified there was no correlation between the finding that the plaintiff suffered a fracture after the accident and the plaintiff's complaints of pain to her coccyx, sacroiliac joint, and piriformis muscle, as the fracture was 8 to 10 inches from the area treated as a result of the motor vehicle accident. *Noble*, 2013 IL App (5th) 120248, ¶ 25. For these reasons, this court concluded it did not believe sufficient expert testimony was presented to establish a causal connection between the plaintiff's injuries to her low back and her subsequent fracture and the plaintiff's injuries to her coccyx, sacroiliac joint, and piriformis muscle. *Noble*, 2013 IL App (5th) 120248, ¶ 25.

¶ 44 In the instant case, Dr. Kennedy's testimony amounted to little more than speculation and conjecture, as defense counsel failed to provide any medical testimony or other competent evidence establishing a causal link between the phantom causes of injuries suggested and plaintiff's injuries incurred as a result of the dog incident. This type of speculative testimony is prohibited under *Voykin*. "Regardless of how skilled or experienced an expert may be, he is not permitted to speculate or to state a judgment based on conjecture, *i.e.*, a conclusion based on assumptions not in evidence or contradicted by the evidence." *Royal Elm Nursing &*

16

*Convalescent Center, Inc. v. Northern Illinois Gas Co.*, 172 Ill. App. 3d 74, 79 (1988). Moreover, experts are prohibited to opine regarding the cause of an injury based on nonexistent facts. *Yanello v. Park Family Dental*, 2017 IL App (3d) 140926, ¶ 44. For the foregoing reasons, the trial court abused its discretion in admitting Dr. Kennedy's testimony regarding unsubstantiated hypothetical causes of plaintiff's injuries.

¶ 45 Defendant argues that, unlike *Voykin* and its progeny, which concerned cases where the defendants attempted to argue prior and subsequent accidents and/or conditions were a cause of the plaintiff's injuries and damages, no testimony was elicited in the instant case regarding any prior injuries and conditions or any subsequent accidents which may have caused plaintiff's injuries. Defendant contends that nothing in *Voykin* or its progeny prohibits the foundational and/or background testimony elicited from Dr. Kennedy during cross-examination regarding potential mechanisms of plaintiff's injuries. We disagree.

¶ 46 Although defendant did not introduce evidence that plaintiff's injury was related to a specific prior or subsequent accident, defendant did introduce evidence that suggested plaintiff's injury may have been the result of something other than the dog incident. We find this to be a distinction without a difference. As previously stated, defense counsel asked Dr. Kennedy if he agreed with the following statement: "Sometimes people's back will just go out for no reason," which is referred to as an "idiopathic cause." Dr. Kennedy replied, "Yes." Defense counsel further asked Dr. Kennedy if he agreed that the annular fissure plaintiff suffered as a result of the dog incident could have been caused by "many other factors." Dr. Kennedy replied, "Possible." Thus, defense counsel attempted to present a phantom cause of plaintiff's injury without any medical evidence to support such a claim. This type of unsupported speculation and conjecture is inadmissible under *Voykin*.

17

¶ 47    Defendant also cites *Hahn v. Union Pacific R.R. Co.*, 352 Ill. App. 3d 922 (2004), in support of his position, which held that an employee's neurosurgeon was permitted to testify as to what might or could have caused the employee's injury. Specifically, the *Hahn* court explained:

> "To be probative on the issue of causation, a medical expert is not required to give an opinion regarding a *specific* cause. Rather, a medical expert is permitted to testify to what might or could have caused an injury, despite any objection that the testimony is inconclusive. Testimony from a physician regarding what might or could have caused an injury is merely a medical opinion given on facts assumed to be true. [Citations.] For evidence to be relevant, it need only tend to make the existence of any fact more probable or less probable than it would otherwise be." (Emphasis in original.) *Hahn*, 352 Ill. App. 3d at 930.

¶ 48    After careful review, we find *Hahn* distinguishable from the instant case. In *Hahn*, the court permitted the testimony of a neurosurgeon who opined there was a causal connection between the events described in the employee's history and the initiation of the employee's symptoms, despite an argument that the causation testimony was inconclusive. As the court noted, "an examination of a plaintiff and a review of his medical history provide a sufficient foundation from which a treating physician may offer opinions on the cause of his injury." *Hahn*, 352 Ill. App. 3d at 931. The court concluded the neurosurgeon's testimony was based upon his specialized knowledge and experience and not mere guess or speculation, and the testimony served to narrow the reasonable probabilities of causation in an area where limited medical knowledge does not permit an unequivocal opinion. *Hahn*, 352 Ill. App. 3d at 931.

18

¶ 49     In contrast, defense counsel in this case elicited testimony from Dr. Kennedy regarding potential events that never occurred. Defense counsel attempted to establish causation from events that Dr. Kennedy explicitly stated were never established in plaintiff's medical records. We reiterate that for an alternative event to be relevant to causation, it must make it less likely that the defendant's actions caused any of the plaintiff's injuries or an identifiable portion thereof. *Voykin*, 192 Ill. 2d at 58. Here, the phantom causes of injury suggested by defense counsel do not make it less likely that defendant's dog caused plaintiff's injuries, as these phantom causes never occurred. Accordingly, we reject defendant's argument.

¶ 50                                CONCLUSION

¶ 51     In sum, we conclude the trial court erred in admitting unsupported evidence on cross-examination regarding potential alternative causes of plaintiff's injuries. *Voykin* prohibits this type of speculative testimony. Given our disposition, we need not address plaintiff's remaining contention alleging the jury's award of damages was against the manifest weight of the evidence. In light of the trial court's directed verdict in favor of plaintiff, as well as the *Voykin* violations noted above, we reverse the judgment of the circuit court of Madison County and remand this cause for a new trial on damages only.

¶ 52     Reversed and remanded.

19

2018 IL App (5th) 170148

NO. 5-17-0148

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STEVEN CAMPBELL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-L-1904 |
| | ) | |
| KEVIN AUTENRIEB, | ) | Honorable |
| | ) | William A. Mudge, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed:** July 10, 2018

**Justices:** Honorable Richard P. Goldenhersh, J.

Honorable John B. Barberis, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

**Attorneys for Appellant** Roy C. Dripps, Charles W. Armbruster III, Michael T. Blotevogel, Armbruster, Dripps, Winterscheidt & Blotevogel, LLC, 51 Executive Plaza Court, Maryville, IL 62062

**Attorney for Appellee** Michael P. Murphy, Freeark, Harvey & Mendillo, P.C., 115 W. Washington Street, P.O. Box 546, Belleville, IL 62222-0546