NOTICE
Decision filed 12/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231205

NOS. 5-23-1205, 5-23-1213 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| AMANDA TOLES, on Behalf of Herself and Her Minor Child, Z.T. *et al.*,[*] | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 21-L-981 |
| MEAD JOHNSON & COMPANY, LLC, *et al.*, | ) ) ) | Honorable Patrick R. Foley, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Moore and Hackett[**] concurred in the judgment and opinion.

**OPINION**

¶ 1     This case is before this court on interlocutory appeal from the circuit court of St. Clair County. The underlying action originated on October 21, 2021, when the plaintiff, Amanda Toles, on behalf of herself and her minor child, Z.T., filed a lawsuit in the circuit court of St. Clair County (case No. 21-L-981), against the defendants, Mead Johnson & Company, LLC, Mead Johnson Nutrition Company (collectively, Mead Johnson), and Abbott Laboratories (Abbott). The complaint alleged that the plaintiff infant born prematurely was given defendants' cow's milk-based infant feeding products, which caused the plaintiff infant to develop necrotizing enterocolitis

_____

[*]See the appendix to this opinion for a list of all plaintiffs, defendants, and case numbers.
[**]Justice Welch participated in oral argument. Justice Hackett was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

1

(NEC), resulting in serious injury. The complaint further alleged strict products liability based on design defects, failure to warn, negligence, intentional misrepresentation, and negligent misrepresentation. Other NEC lawsuits regarding similar allegations against the defendants have been filed in both state and federal courts across Illinois and the country.

¶ 2       On January 18, 2022, Abbott filed a motion to transfer venue to Lake County, Illinois, the location of Abbott headquarters. On August 10, 2022, Abbott filed a motion in the Toles case to transfer for *forum non conveniens* to Cook County, Illinois. In response to a request by the parties, on August 25, 2022, the circuit court entered a case management order for coordination of 20 NEC lawsuits filed in St. Clair County for pretrial and discovery purposes. The circuit court noted in its order that the parties had stipulated and agreed that any future NEC lawsuits filed in St. Clair County related to the use of cow's-milk based preterm infant formula or fortifier involving the same defendants and plaintiff's counsel also would be coordinated for pretrial and discovery purposes under the Toles case caption. Although the specifics of the plaintiffs' claims varied—the 90 plaintiff infants were born across approximately two decades (from 2000-22), in a variety of hospitals, in states across the country—they were identical in two respects: each infant received the defendants' cow's-milk based preterm infant formula or fortifier products, and each infant developed NEC. Abbott also filed motions to dismiss for *forum non conveniens* in the subsequent NEC lawsuits addressed in the circuit court's case management order, arguing the more convenient fora for these lawsuits were the states in which the plaintiff infants were born, allegedly consumed Abbott formula products, and allegedly suffered injury or death.

¶ 3       The matter continued with the parties exchanging written discovery and conducting depositions of witnesses related to personal jurisdiction, venue, and *forum non conveniens*. On

2

January 20, 2023, Mead Johnson filed in each NEC case a motion to dismiss for lack of personal jurisdiction, or, in the alternative, a motion to transfer venue.[1]

¶ 4    On June 30, 2023, Mead Johnson filed a motion to dismiss for *forum non conveniens*. On September 18, 2023, the plaintiffs filed a consolidated opposition to Mead Johnson's and Abbott's motions to transfer venue and an omnibus response to Abbott's motion to dismiss pursuant to *forum non conveniens*. The plaintiffs attached thousands of pages of exhibits to their responses. On September 25, 2023, Abbott filed a reply in support of its motion to transfer venue and a reply in support of its motion pursuant to *forum non conveniens*. On May 31, 2023, the circuit court held a hearing on Mead Johnson's combined motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer venue, and Abbott's motions regarding venue. On October 30, 2023, the circuit court entered an order denying Mead Johnson's motion to dismiss for lack of personal jurisdiction regarding non-Illinois residents.[2] The circuit court also entered orders denying the defendants' motions to transfer venue and denying each defendants' motion to transfer or dismiss pursuant to *forum non conveniens*.

¶ 5    On November 29, 2023, Abbott filed a petition for leave to appeal the circuit court's orders dated October 30, 2023, pursuant to paragraphs (a)(2) (*forum non conveniens*) and (a)(4) (venue) of Illinois Supreme Court Rule 306 (eff. Oct. 1, 2020). On the same day, Mead Johnson filed its

---

[1]The supporting record does not include Mead's motion to dismiss for lack of personal jurisdiction, or, in the alternative, a motion to transfer venue in Peer v. Mead Johnson & Co., No. 22-LA-0314 (Cir. Ct. St. Clair County), which was listed in the circuit court's jurisdiction order.

[2]Foshee v. Abbott Laboratories, No. 22-LA-0244 (Cir. Ct. St. Clair County), and Greenwade v. Abbott Laboratories, No. 23-LA-0057 (Cir. Ct. St. Clair County), were included in the circuit court's jurisdiction order; however, Mead Johnson is not a party in either case and, thus, not included in Mead Johnson's jurisdiction motion. Pagan v. Mead Johnson & Co., No. 23-LA-0002 (Cir. Ct. St. Clair County), was included in the circuit court's jurisdiction order; however, the plaintiffs in the Pagan action are Illinois residents and, thus, not included in Mead Johnson's jurisdiction motion. Gill v. Mead Johnson & Co., No. 22-LA-0643 (Cir. Ct. St. Clair County), was included in the circuit court's jurisdiction order; however, the Gill action was voluntarily dismissed.

petition for leave to appeal pursuant to paragraphs (a)(2) (*forum non conveniens*), (a)(3) (personal jurisdiction), and (a)(4) (venue) of Illinois Supreme Court Rule 306 (eff. Oct. 1, 2020). On February 16, 2024, this court granted permission for an interlocutory appeal to proceed in Toles v. Mead Johnson & Co., case No. 21-L-0981. Additional facts will be presented where necessary in the analysis.

¶ 6                               II. ANALYSIS

¶ 7     Mead Johnson argues that the circuit court erred in finding it had general and specific personal jurisdiction over Mead Johnson, that the circuit court erred in denying its motion to transfer venue, and that the circuit court erred in denying its motion to transfer or dismiss pursuant to *forum non conveniens.* Abbott argues that the circuit court erred in denying its motion to transfer venue and abused its discretion in denying its motion to transfer or dismiss pursuant to *forum non conveniens*.

¶ 8                           A. Personal Jurisdiction

¶ 9     Subsequent to filing its brief in this case, Mead Johnson filed a motion to cite a recent memorandum opinion and order from the United States District Court for the Northern District of Illinois, *Harden v. Mead Johnson & Co., LLC*, No. 24 CV 108, 2024 WL 2882214 (N.D. Ill. June 7, 2024), as supplemental authority in support of its personal jurisdiction arguments, which we allowed. The plaintiffs responded in their initial brief. The case, as well as the plaintiffs' response, will be discussed below.

¶ 10    The defendant maintains the circuit court erred in finding it had general and specific jurisdiction over Mead Johnson. In its motion to dismiss for lack of personal jurisdiction, Mead Johnson confirmed it manufactured numerous varieties of infant formula marketed under the brand name Enfamil®. Products intended for significantly premature/very low birthweight infants

4

include Enfamil Human Milk Fortifier®, Enfamil Premature (in several different calorie concentrations), and Enfamil EnfaCare®. In its response to plaintiffs' jurisdictional interrogatories, Mead Johnson confirmed that the three products intended for premature/very low birthweight infants have been available continuously for purchase by buyers in Illinois since 2000. Additionally, Mead Johnson confirmed that its marketing for these products for neonatal intensive care units (NICU) use has been conducted by its medical sales force, which has been active in Illinois continuously since 2000. These products are not advertised or marketed to the general public.

¶ 11    Section 2-301(a) of the Code of Civil Procedure (Civil Code) provides, in pertinent part, that prior to the filing of any pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person by filing a motion to dismiss the proceeding. 735 ILCS 5/2-301(a) (West 2022). In disposing of a motion objecting to jurisdiction, the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact. *Id.* § 2-301(b).

¶ 12    The plaintiffs bear the burden to establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12. "A plaintiff's *prima facie* case may be rebutted where a defendant presents uncontradicted evidence that defeats jurisdiction." *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243, 246 (2007). Where a circuit court held an evidentiary hearing on the issue of personal jurisdiction and made factual findings, a reviewing court will consider its relevant factual findings under the manifest weight of the evidence standard. *Nunez v. C&C Investments of Chicago, LLC*, 2022 IL App (1st) 211423, ¶ 17. "However, the

5

circuit court's legal conclusions—including its conclusions regarding the legal effect of its own factual findings and its ultimate resolution of the issue of personal jurisdiction—will be reviewed *de novo*." *Id.* Under a manifest weight of the evidence standard, a reviewing court should reverse a trial court's determination "only when the opposite conclusion is clearly evident or where the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence." *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010).

¶ 13   "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "State courts may 'exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 18 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). There are two categories of personal jurisdiction which have been recognized: "general or all-purpose jurisdiction and specific or case-linked jurisdiction." *Id.* ¶ 19. The required "minimum contacts" for personal jurisdiction differ depending upon whether general jurisdiction or specific jurisdiction is asserted. *Russell v. SNFA*, 2013 IL 113909, ¶ 36.

¶ 14                              1. *General Jurisdiction*

¶ 15   "A state court may assert general jurisdiction to hear any claims against a nonresident corporation when the corporation's 'affiliations with the State are so continuous and systematic as to render' it 'essentially at home' in the State." *Rios*, 2020 IL 125020, ¶ 19 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In *Daimler*, the United States Supreme Court identified two places in which a corporation is "at home": its state of incorporation and the state in which it has its principal place of business. *Daimler*, 571 U.S. at 137. A

6

corporation's principal place of business has been defined as its "nerve center"; that is, "the place where a corporation's officers direct, control, and coordinate the corporation's activities." (Internal quotation marks omitted.) *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

¶ 16    Mead Johnson contends that general jurisdiction is barred where its "nerve center"—the place where actual management decisions are made—was not in Illinois at the time the NEC lawsuits were filed. It argues that Illinois has not been Mead Johnson's corporate nerve center since the end of 2018. Mead Johnson & Company, LLC, is a Delaware limited liability company. Mead Johnson Nutrition Company (Mead Johnson Nutrition), a Delaware corporation, is the sole member of Mead Johnson & Company, LLC. Prior to 2009, the principal place of business of both Mead Johnson entities was Evansville, Indiana. In May of 2009, Mead Johnson moved its corporate headquarters and principal place of business to Illinois. Mead Johnson maintains that after it was acquired by Reckitt Benckiser PLC, a United Kingdom company, all actual management functions that had been conducted in Illinois were moved out of Illinois by the end of 2018. The defendant notes that Mead Johnson & Company, LLC, which is the entity that owns and runs the formula business, changed its Illinois corporate registration on October 13, 2021, before the first of the NEC lawsuits subject to its personal jurisdiction motions was filed. We note that the complaint in the Toles case was filed on October 12, 2021; however, Toles, who is a resident and citizen of Illinois, was not subject to Mead Johnson's personal jurisdiction motion. Mead Johnson Nutrition, in turn, has not had an active registration in Illinois since February 2019. Mead Johnson maintains that general jurisdiction does not exist because it merely continues to have some "non-nerve center" operations in Illinois and because, in corporate filings and a handful of pleadings in other cases, Mead Johnson mistakenly continued to list Illinois even after it had moved out, which Mead Johnson insists were simply clerical errors.

7

¶ 17 The plaintiffs counter that Illinois courts have general jurisdiction over Mead Johnson where its home was in Cook County, Illinois, for nearly a decade during the relevant period leading up to the NEC litigation. The plaintiffs dispute that Mead Johnson's representations that it was an Illinois corporation were simply clerical errors. The plaintiffs assert that even after Mead Johnson claims it had moved its operations to Indiana, it continued to hold itself out as an Illinois company to the government, the courts, and the public. For example, on March 7, 2021, Mead Johnson's vice president and general counsel of nutrition affirmed to the Illinois Secretary of State "under penalties of perjury" that Mead Johnson's principal place of business was Chicago, Illinois. On October 12, 2021, when the first NEC complaint was filed in St. Clair County, Mead Johnson had designated Illinois as its home base in nearly all public filings that asked for a principal place of business, and Mead Johnson's website identified Chicago as its global headquarters.

¶ 18 The circuit court found that, contrary to its assertion that it had relocated to Indiana, Mead Johnson continued to hold itself out as an Illinois company after 2018. Furthermore, the circuit court found it significant that Mead Johnson's corporate headquarters were located in Illinois during the time that its challenged conduct occurred related to the products at issue in the NEC lawsuits. We agree. Of the 64 plaintiff infants subject to the circuit court's jurisdiction order, 38 were born during the time that Mead Johnson admits its corporate headquarters and principal place of business were located in Illinois (from May 2009 through the end of 2018). We note that 11 plaintiff infants were born prior to May 2009 and 15 were born after 2018. Thus, during the time period when a majority of the plaintiff infants were born, Mead Johnson's "nerve center" was located in Illinois.

¶ 19 In its motion to cite supplemental authority, Mead Johnson relies on a recent district court's memorandum opinion and order in a case brought against Mead Johnson & Company, LLC,

involving allegations of the sale of contaminated baby formula. Mead Johnson submits that in *Harden*, the district court, addressing personal jurisdiction arguments with the same basic facts present here, ruled that Mead Johnson was not subject to either general jurisdiction or, with respect to the claims of an out-of-state resident, specific jurisdiction in Illinois because Mead Johnson had moved its headquarters from Illinois to Indiana in 2018. *Harden*, 2024 WL 2882214, at *5. Mead Johson recognizes that the case is not binding on this court but argues, nevertheless, the case is persuasive authority.

¶ 20    The plaintiffs counter that *Harden* is factually distinguishable. In *Harden*, the plaintiffs agreed that Mead Johnson moved its headquarters to Indiana, and the district court denied jurisdictional discovery, thus accepting Mead Johnson's declaration stating that its headquarters is in Indiana. *Id.* In the instant case, the plaintiffs argue, the parties have engaged in significant jurisdictional discovery that they contend establishes that Mead Johnson had not yet completed moving its headquarters to Indiana at the time the complaints were filed. The plaintiffs' argument is well taken, and we do not find *Harden* persuasive.

¶ 21    Even so, Mead Johnson maintains its argument that general jurisdiction does not exist as it had moved its principal place of business to Indiana by the time the NEC complaints were filed. However, the inquiry into general jurisdiction is not a snapshot of a defendant only at the time of filing. See *Riemer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 35 (2004). "In order to determine whether a foreign corporation has established a permanent and continuing relationship with Illinois, a court reviews its contacts with the forum over a continuous period of time rather than a specific, fixed point in time." *Id.* The relevant time period to be reviewed begins approximately when the claims arose and extends to when suit was filed and service of process was attempted, with the critical point of inquiry being the time the defendant was made a party to the suit and was

9

served. *Id.* at 35-36; see *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984) (examining jurisdictional evidence dating back seven years from suit).

¶ 22  Here, the circuit court found that although it claimed to have moved its principal place of business to Indiana by the end of 2018, Mead Johnson's transition from Illinois was not complete at the time the NEC lawsuits were filed as its continued operations in Illinois were "so substantial and of such a nature as to render the corporation at home" in Illinois. *Daimler*, 571 U.S. at 139 n.19; *Aspen*, 2017 IL 121281, ¶ 17. We agree. Review of the record reveals the office space for its former Chicago headquarters remains a Mead Johnson office. Mead Johnson continues to employ dozens of people who reside in Illinois, many who previously were employed at Mead Johnson's Illinois headquarters, including its global director of hospital marketing responsible for the strategic planning of Mead Johnson's hospital marketing efforts, a national accounts team lead responsible for supervising staff and managing sales relationships with hospitals across the United States, and a manager responsible for nationwide commercial training. The record reveals that some of the employees still remaining in Illinois are responsible for offering in-person and virtual training in Illinois to sales representatives from across the United States regarding sales of Mead Johnson's products to NICU.

¶ 23  Accordingly, we find that because its principal place of business was located in Illinois from May 2009 through the end of 2018, Mead Johnson was not a nonresident defendant during this period. Thus, Mead Johnson's argument regarding the 38 plaintiff infants born during this time period fails. Further, we find that even after Mead Johnson claims to have moved its principal place of business out of Illinois, it continued to have substantial and continuous contacts with Illinois as to render it essentially at home in Illinois, and thus, we find that Mead Johnson is subject to the general jurisdiction of Illinois regarding the 15 NEC lawsuits filed after 2018.

10

¶ 24                    2. *Specific Jurisdiction*

¶ 25    In addition to finding general jurisdiction, the circuit court found specific jurisdiction. Mead Johnson argues that the circuit court erred in so finding as specific jurisdiction may not be premised on its general business activities in Illinois that are not related to specific plaintiffs' specific injuries. It maintains that the plaintiffs' claims that their infants became ill after ingesting Mead Johnson products in other states have no connection to Illinois, much less to St. Clair County, because none of them were born, treated, or became ill there.

¶ 26    In response, the plaintiffs contend that Illinois courts have specific jurisdiction over Mead Johnson because the claims against it arise out of longstanding and pervasive contacts with Illinois. During the relevant years in Illinois, they argue, Mead Johnson managed its preterm formula business, conducted research and development of its preterm formula products from Illinois, developed its preterm product marketing strategy, and did so in partnership with Illinois companies such as Catalent Pharma Solutions.[3] The plaintiffs argue that any one of these contacts is sufficient for specific personal jurisdiction.

¶ 27    In Illinois, the exercise of personal jurisdiction over a nonresident defendant is authorized under the "long-arm" statute found in section 2-209(c) of the Civil Code (735 ILCS 5/2-209(c) (West 2022)). *Aspen*, 2017 IL 121281, ¶ 13. A circuit court may exercise jurisdiction on any "basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2022). To determine whether jurisdiction is appropriate under the long-arm statute, we must consider the constitutional limits placed on a state's authority to exercise

---

[3]In 2007, Mead Johnson contracted with Catalent Pharma Solutions located in Woodstock, Illinois, to manufacture, inspect, and package certain of Mead Johnson's liquid human milk fortifier product. The record reveals that Mead Johnson continued its relationship with Catalent Pharma Solutions into July 2018. It is not clear from the record whether this relationship continued after Mead Johnson was purchased in 2018.

jurisdiction over a nonresident defendant. *Aspen*, 2017 IL 121281, ¶ 13. Since the parties have not argued that the Illinois Constitution limits the exercise of personal jurisdiction to a greater degree than the United States Constitution, we will not consider Illinois due process principles separately from federal due process principles. *Russell*, 2013 IL 113909, ¶ 33.

¶ 28 Unlike general jurisdiction, specific jurisdiction is "case-linked." *Rios*, 2020 IL 125020, ¶ 19. "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). If the court finds that a defendant has the requisite minimum contacts with the forum state, the court must then consider whether it is reasonable to require the defendant to litigate in Illinois. *Id.* ¶ 87. " 'The determination as to what constitutes sufficient minimum contacts depends upon the facts of each case.' " *Unterreiner v. Pernikoff*, 2011 IL App (5th) 110006, ¶ 5 (quoting *Ballard v. Fred E. Rawlins, M.D., Inc.*, 101 Ill. App. 3d 601, 603 (1981)).

¶ 29                                a. Purposeful Availment

¶ 30 "The 'purposeful availment' requirement protects a nonresident defendant from being brought into a jurisdiction based on random or attenuated contacts or the unilateral activity of another person." *Solomon v. Center for Comprehensive Services, Inc.*, 2023 IL App (5th) 210391, ¶ 41 (quoting *Burger King*, 471 U.S. at 475). Having determined that Mead Johnson was not a nonresident defendant while its principal place of business was in Illinois (from May 2009 through the end of 2018), we consider Mead Johnson's argument that it did not purposefully avail itself of the privilege of conducting activities in Illinois only as to those plaintiff infants born prior to May 2009 or after 2018.

12

¶ 31    As our state supreme court determined, "one way to satisfy the requirements for specific jurisdiction is under the 'stream of commerce' theory, an approach first recognized by the United States Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)." *Russell*, 2013 IL 113909, ¶ 43. Under the broad stream of commerce theory, "minimum contacts between a nonresident defendant and the forum state are established when the defendant participates in the regular and anticipated flow of products from manufacture to distribution to retail sale and the defendant is aware that the final product is being marketed in the forum state." *Id.* ¶ 53. Under the narrow stream of commerce theory, "a nonresident defendant does not establish minimum contacts with the forum unless it engages in additional conduct beyond merely placing products into the stream of commerce." *Id.*

¶ 32    Although it has declined to adopt either the broad or narrow stream of commerce theory without further guidance from the United States Supreme Court, our state's high court has deciphered three points from *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). First, although the proper application of the stream of commerce theory is not settled, the United States Supreme Court has "unanimously endorsed" its continued validity to establish specific personal jurisdiction. *Russell*, 2013 IL 113909, ¶ 67 (citing *McIntyre*, 564 U.S. at 879-85). Second, "specific jurisdiction should *not* be exercised based on a single sale in a forum, even when a manufacturer or producer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states.' " (Emphases in original.) *Id.* ¶ 68 (quoting *McIntyre*, 564 U.S. at 891 (Breyer, J., concurring, joined by Alito, J.)). "And third, a minority of the United States Supreme Court believes that a broader stream-of-commerce theory should be applied to adapt to modern globalized commerce and is warranted under *International Shoe Co. v. State of Washington*, 326

13

U.S. 310 (1945)." *Hernandez v. Oliveros*, 2021 IL App (1st) 200032, ¶ 19 (citing *Russell*, 2013 IL 113909, ¶ 69).

¶ 33   In the instant case, Mead Johnson had sufficient contacts with Illinois under the broad stream of commerce theory. Review of the record reveals that Mead Johnson has delivered its formula products intended for premature/very low birthweight infants into the stream of commerce in Illinois continuously since 2000. The record also reveals that Mead Johnson has been actively marketing these products for NICU use in Illinois since 2000. There is no evidence that Mead Johnson discontinued its sales or marketing of these products in Illinois after it was purchased in 2018 and began its transition out of Illinois. Thus, Mead Johnson's denial that it purposefully directed its business activities at Illinois is refuted by the record. See *Linder v. A.W. Chesterton Co.*, 2020 IL App (5th) 200101, ¶ 12 ("[S]pecific personal jurisdiction is established by a showing that the defendants purposefully sold the [products] that are the subject of this lawsuit in Illinois.").

¶ 34   Mead Johnson argues that *Linder* stands for the proposition that where products sold in Illinois cause an injury in Illinois, specific jurisdiction exists because the injury arose specifically from the sale of those products in Illinois. See *id.* ¶¶ 11-12. In the present case, it argues, there is no allegation that any plaintiff infant consumed its product that had been sold in Illinois or became ill as a result. We view this argument as a misreading of the case as the *Linder* court was merely quoting our state supreme court in *Russell*: " '[s]pecific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state.' " *Linder*, 2020 IL App (5th) 200101, ¶ 11 (quoting *Russell*, 2013 IL 113909, ¶ 40).

¶ 35   We also find that Mead Johnson had sufficient contacts with Illinois under the narrow stream of commerce theory. As the circuit court found, in addition to placing its products into the

14

stream of commerce, the record reveals that Mead Johnson contracts with Illinois hospitals to provide its products, including formula, at discounted prices based on the hospitals' use of those products. While Mead Johnson was located in Illinois, those contracts were supervised by the vice president of sales, working out of the Chicago headquarters. As of May 14, 2021, those contracts are directly supervised by the Illinois-based national accounts team lead. Furthermore, the record reveals that Mead Johnson continues to benefit from exclusive contracts with many Illinois hospitals as a result of work done during the period its principal place of business was located in Illinois. Finally, since 2008, Mead Johnson has held the exclusive contract for the Illinois Women, Infants, and Children (WIC) program, which provides Mead Johnson's formula products to infants in Illinois. The WIC program requires Illinois retail vendors to stock Mead Johnson's formula products at all times. As of March 2022, 43,568 Illinois infants were enrolled in the WIC program. Accordingly, we find that under either the broad or narrow stream of commerce theory, there is ample evidence that Mead Johnson purposefully directed its activities at Illinois.

¶ 36        b. Arising Out of or Relating to Mead Johnson's Contacts with the Forum

¶ 37     A finding of specific jurisdiction also requires that "the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40. Courts have determined that this standard is lenient and flexible. *Id.* ¶ 83. The " 'essential foundation' " of specific jurisdiction is "a strong 'relationship among the defendant, the forum, and the litigation.' " *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 365-66 (2021) (quoting *Helicopteros*, 466 U.S. at 414).

¶ 38     Mead Johnson argues that the causes of action did not arise out of or relate to its contacts with Illinois where none of the plaintiffs allege that any infant at issue consumed any Mead Johnson product in Illinois, got sick in Illinois, or was treated in Illinois. Thus, it argues, there can

15

be no specific jurisdiction without such a connection. Contrary to Mead Johnson's argument, the circuit court correctly noted that the personal jurisdiction analysis focuses " 'on the defendant's activities within the forum State, not on those of the plaintiff.' " *Campbell v. Mills*, 262 Ill. App. 3d 624, 627 (1994) (quoting *Sackett Enterprises, Inc. v. Staren*, 211 Ill. App. 3d 997, 1004 (1991)). Mead Johnson cites no authority for the proposition that a plaintiff must reside or be injured in a forum state for the state to assert personal jurisdiction.

¶ 39 Moreover, in *Ford Motor Co.*, the United States Supreme Court rejected a "causation-only" approach to relatedness, explaining:

"The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at 361-62.

¶ 40 Mead Johnson asserts that *Rios* is controlling on the issue of specific jurisdiction and that the circuit court erred in dismissing our state supreme court's holding in *Rios*, 2020 IL 125020. Mead Johnson maintains that *Rios* held that nationwide marketing efforts and clinical trials conducted from Illinois, as was done in the instant case, do not create specific personal jurisdiction where the plaintiffs and their doctors received the marketing materials and the challenged products in their home states, not in Illinois. However, this is a misreading of *Rios*. The question before the *Rios* court was "whether the circuit court properly exercised specific personal jurisdiction over nonresident defendants as to nonresident plaintiffs' claims for personal injury *when the*

16

*nonresident plaintiffs did not allege any connection between their specific claims and Illinois*."
(Emphasis added.) *Id.* ¶ 16. The *Rios* court held that Illinois courts lacked personal jurisdiction
over the defendant where the plaintiff had made no Illinois-specific allegations. Here, to the
contrary, the plaintiffs asserted several claims related to the plaintiff infants' use of the defendants'
allegedly defective cow's milk-based infant feeding products, which caused the infants to develop
NEC. These are the very products that Mead Johnson confirmed it had actively marketed for NICU
use in Illinois continuously since 2000, which is the year the first plaintiff infant was born.
Accordingly, we conclude that the cause of action arose out of or related to Mead Johnson's
contacts with Illinois. See *Russell*, 2013 IL 113909, ¶ 40. Thus, we find that the circuit court did
not err in finding it had specific jurisdiction over Mead Johnson.

¶ 41                                c. Reasonableness

¶ 42     Having concluded that Mead Johnson had the requisite minimum contacts with Illinois, we
now consider whether "subjecting [Mead Johnson] to litigation in Illinois is reasonable under
traditional notions of fair play and substantial justice." See *id.* ¶¶ 34, 87. To determine whether
litigation in Illinois is reasonable, we consider (1) the burden imposed on Mead Johnson to litigate
in Illinois, (2) Illinois's interest in resolving the dispute, (3) the plaintiffs' interest in obtaining
convenient and effective relief, and (4) the judicial system's interest in obtaining the most efficient
resolution of the controversy. *Rios*, 2020 IL 125020, ¶ 30. "Instead of conducting a mechanical or
quantitative assessment of a corporation's activities within the state, a court evaluates the quality
and nature of the corporation's activities within the state, to determine whether it is reasonable to
require the corporation to defend a particular suit within that forum." *Riemer*, 348 Ill. App. 3d at
34. Once it has been determined that a defendant has purposefully directed his activities at a forum,
the defendant must present a compelling case to defeat jurisdiction. *Aasonn, LLC v. Delaney*, 2011

17

IL App (2d) 101125, ¶ 25 (citing *Burger King*, 471 U.S. at 477). "Compelling cases are limited to those rare situations where Illinois's interests in adjudicating the dispute are clearly outweighed by the burden of subjecting the defendant to litigation in Illinois." *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 31.

¶ 43 We find that Mead Johnson has failed to present a compelling case to defeat jurisdiction. Although Mead Johnson argues generally that litigating the NEC lawsuits in Illinois impose upon it meaningful cost and burden in a state and county in which it does not belong, it provides no explanation or argument beyond conclusory statements. Thus, it has not presented a cogent legal argument that litigation in Illinois is unreasonable. Accordingly, the argument is forfeited. See *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 50 (single conclusory sentence in brief without argument in support violated Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017) such that the argument was forfeited); see also *Russell*, 2013 IL 113909, ¶ 91 (finding French manufacturer subject to personal jurisdiction in Illinois was reasonable considering its multiple sales made in Illinois during the past 10 years and its business with an Illinois manufacturer); *Kothawala v. Whole Leaf, LLC*, 2023 IL App (1st) 210972, ¶ 63 (finding nonresident defendant subject to personal jurisdiction in Illinois was reasonable where defendant made extensive sales into Illinois, "presumably reaping considerable profits" and, thus, it "[could not] come as a surprise that litigation might follow in this forum, even if the particularities of how its product was used might be unforeseen"). Accordingly, we find it is reasonable for Illinois to exercise specific personal jurisdiction over Mead Johnson regarding all of the plaintiff infants subject to the circuit court's jurisdiction order.

¶ 44                                    B. Venue

¶ 45    The defendants moved to transfer the NEC lawsuits to other Illinois counties on the basis that venue is not proper in St. Clair County. Abbott moved to transfer venue to Lake County, Illinois, the location of its headquarters. Regarding the NEC lawsuits in which Abbott was also a defendant, Mead Johnson also moved to transfer venue to Lake County, Illinois. In its written order, the circuit court addressed each defendants' arguments regarding venue separately, finding the defendants failed to meet their burdens to establish that they did not reside in St. Clair County. The circuit court indicated its venue order related to the 35 cases listed on plaintiffs' exhibit A. The defendants contend that the circuit court erred in denying their respective motions to transfer venue. We address each argument in turn.

¶ 46                          1. *Mead Johnson's Venue Argument*

¶ 47    Mead Johnson contends it was not "doing business" in the county for purposes of venue such that it was a resident of St. Clair County. A two-step analysis is required when reviewing an order on a motion to transfer based on improper venue. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005). The reviewing court will not disturb the circuit court's findings of fact unless those findings are against the manifest weight of the evidence. *Id.* The circuit court's legal conclusions are subject to *de novo* review. *Id.* When utilizing *de novo* review, we perform the same analysis that a circuit court would perform. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25. Further, "we may affirm on any basis appearing in the record, whether or not the [circuit] court relied on that basis and whether or not the [circuit] court's reasoning was correct." *Id.*

¶ 48    In Illinois, venue is purely statutory. *Tabirta v. Cummings*, 2020 IL 124798, ¶ 19. The venue statute provides that every action must be commenced either:

19

"(1) *in the county of residence* of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added.) 735 ILCS 5/2-101 (West 2022).

Section 2-102(a) sets forth the residency considerations for corporate defendants. It states that a private corporation "is a resident of any county in which it has its registered office or other office or is doing business." *Id.* § 2-102(a).

¶ 49    "A defendant who objects to a plaintiff's chosen venue bears the burden of proving that the venue is incorrect." *Tabirta*, 2020 IL 124798, ¶ 17 (citing *Corral*, 217 Ill. 2d at 155). Further, to prove the venue selection was improper, the defendant must set forth, by affidavit or other evidence, specific facts, not conclusions, and show a clear right to the relief asked for. *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987). "Any doubts arising from the inadequacy of the record will be resolved against the defendant." *Id.*

¶ 50    In their complaints, the plaintiffs alleged that the defendant corporations are residents of St. Clair County because they "conduct business there." See 735 ILCS 5/2-101(1), 2-102(a) (West 2022). In the context of "doing business" sufficient to establish venue for a corporation pursuant to section 2-102(a), the Illinois Supreme Court has explained that quantitatively more extensive contacts with a county are required compared to the "minimal contacts" required to subject a defendant to the jurisdiction of the courts of Illinois. (Internal quotation marks omitted.) *Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250, 257-58 (1984). A corporation seeking transfer for improper venue must prove the quantity or volume of business conducted by the corporation in the county. *Weaver*, 116 Ill. 2d at 286.

20

¶ 51    Here, the circuit court found that Mead Johnson failed to meet its burden to show that venue did not lie in St. Clair County because it failed to prove the quantity or volume of business it conducted in the county. We agree. The record reveals that Mead Johnson does not sell its products directly to retailers or retail customers in St. Clair County; rather, it sells its products directly to distribution centers located in St. Clair County, which in turn sell the products to retailers who may be located throughout the United States.

¶ 52    Mead Johnson submitted the verified declaration of Mark Andrew Lannert, an employee of Mead Johnson's parent company, in support of its motion regarding venue and *forum non conveniens*. Lannert's declaration set forth, *inter alia*, the following:

> "3. As part of my job, I have knowledge about sales of Mead Johnson products in different geographical locations. Mead Johnson ships its products almost exclusively to customer distribution centers, and therefore *does not have a record of the dollar amount of sales of its products in St. Clair County, IL*. However, we do subscribe to a third party, Nielsen, which provides us with point-of-sale ('POS') sales data at a state and national level.

> 4. Nielsen provides Mead Johnson with data at the state and national level on transactions that occur at the POS system at retail locations selling Mead Johnson formula. Although not all retailers report sales figures to Nielsen, Nielsen is a global leader in data analytics, and its reports are widely relied upon by industry for business analysis and other purposes.

> ***

> 6. While not all retailers report their sales data to Nielsen, Nielsen's reports are based on a large sample of nationwide and statewide sales collected in a standardized way.

21

The data thus provide a reasonably reliable basis for Mead Johnson to draw inferences about its sales, such as the percentage of sales that were in Illinois.

7. In this declaration, *I have estimated*, for 2020, what percentage of Mead Johnson's annual sales, nationally and in Illinois, occur in St. Clair County." (Emphases added.)

¶ 53 The verified declaration submitted by Mead Johnson contains a factual admission that Mead Johnson "does not have a record of the dollar amount of sales of its products in St. Clair County, IL." "A factual admission in a verified pleading constitutes a judicial admission, which has the effect of withdrawing a fact from issue and makes it unnecessary for the opposing party to introduce evidence in support thereof." *L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 35.

¶ 54 The Illinois Supreme Court has examined cases that contained sales data and used that data to determine that a corporation was not doing business in a county for purposes of venue. In *Stambaugh*, 102 Ill. 2d at 259, the defendant sold $2.6 million worth of its products in the county in question, constituting approximately five-hundredths of 1% of its annual sales volume. In *Gardner v. International Harvester Co.*, 113 Ill. 2d 535, 540 (1986), the same defendant sold even less, $2.25 million, in the county in question. In *Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 292 (1990), the defendant sold $289,760 worth of products in the relevant county, representing 2.5% of the defendant's sales in Illinois and 0.12% of its national sales.

¶ 55 The type of sales data examined by the Illinois Supreme Court in the aforementioned cases is absent from the present case. The declaration submitted by Mead Johnson admits that the corporation does not have this information. The declaration goes on to provide an estimate of sales;

22

however, an estimate does not equate to specific facts that show that venue is not proper in St. Clair County.

¶ 56 Any doubts that arise from an insufficient record or inconsistencies in the record will be resolved against the defendants and their request to transfer venue. *Weaver*, 116 Ill. 2d at 285; *Reynolds v. GMAC Financial Services*, 344 Ill. App. 3d 843, 850 (2003). Accordingly, Mead Johnson failed to carry its burden to establish that venue was improper in St. Clair County, and the motion was properly denied by the circuit court.

¶ 57                    2. *Abbott's Venue Argument*

¶ 58 The language of the venue statute is clear. If venue is established in a county based upon the residence of a defendant, who was not joined in bad faith, venue is then proper for any other defendant in the same county. 735 ILCS 5/2-101 (West 2022). As venue was established for Mead Johnson in this case based on residence and not premised upon transactional venue, venue in St. Clair County is also proper for Abbott in those NEC lawsuits where Mead Johnson is also a defendant. Regarding the underlying complaints that named Abbott as the sole defendant, the circuit court analyzed Abbott's venue argument separately and found that venue in St. Clair County was proper.

¶ 59 Abbott contends that venue is not proper in St. Clair County where it does not maintain any "other office" in the county, nor was it "doing business" in the county for purposes of venue. See *id.* § 2-102(a). The circuit court found that Abbott failed to present evidence of the volume of its sales in St. Clair County. Like Mead Johnson, Abbott does not sell directly to retailers as its product sales are to distribution centers located in St. Clair County. We cannot conclude that the circuit court's findings were against the manifest weight of the evidence.

23

¶ 60 The circuit court also found that in addition to selling products, Abbott provided services that included, but were not limited to, drug testing and informatics. The circuit court concluded that the record was devoid of evidence regarding the full extent of services Abbott provided in St. Clair County. The circuit court reasoned that service-generated revenue is as critical to the venue analysis as is revenue generated by product sales and that Abbott's failure to present such evidence was fatal to its venue motion. See *Long v. Gray*, 306 Ill. App. 3d 445, 451 (1999) (holding defendant's failure to provide evidence of revenue generated by freight pick-ups and deliveries during the relevant time precluded defendant from proving it was not doing business in county), *abrogated on other grounds by Corral*, 217 Ill. 2d 144.

¶ 61 The circuit court found that although during oral argument Abbott had asserted it provided sales data for "warranties and other services," Abbott had provided no evidence as to what was included in the phrase "other services," reasoning that while "other services" may have included drug testing and informatics services, it also could have excluded such services. We agree. It was Abbott's burden to provide specific facts, not mere conclusions, that venue in St. Clair County was improper. *Weaver*, 116 Ill. 2d at 285. Here, the circuit court resolved its doubts arising from the inadequacy of the record against Abbott.

¶ 62 On appeal, Abbott insists it did present evidence of the volume of its sales and services in St. Clair County. However, rather than citing to the record to establish that it presented such evidence to the circuit court below, Abbott argues the evidence was presented in "plaintiffs' own briefing [which] attached a chart summarizing *some of the data* from which Abbott's sales figures were calculated." (Emphasis added.) Abbott contends that to the extent it "provided services in St. Clair County during the relevant period (*e.g.*, laboratory and drug testing services), the furnished data *included* any revenue earned from those services." (Emphasis in original.) Yet, once again,

24

Abbott fails to cite the record to support its factual assertions. Instead, in support of its contention, Abbott cites the deposition testimony of its corporate representative. Review of the record reveals the corporate representative was testifying regarding Abbott's sales in Madison County, not St. Clair County. We cannot conclude that the circuit court's findings were against the manifest weight of the evidence. Accordingly, Abbott did not carry its burden to establish that venue was improper in St. Clair County, and the motion was properly denied by the circuit court. Therefore, we need not determine whether Abbott maintains any "other office" in the county.

¶ 63                              C. *Forum Non Conveniens*

¶ 64     In its written order, the circuit court indicated that its *forum non conveniens* orders related to five plaintiff infants identified as the "prioritized plaintiff pool," which included Lynch v. Abbott Laboratories, No. 22-LA-0217 (Cir. Ct. St. Clair County) (Jessica Lynch/estate of Paislee Pineiro born March 7, 2019);[4] Jones v. Abbott Laboratories, No. 22-LA-0785 (Cir. Ct. St. Clair County) (Briana and Daniel Hudson/estate of Daniel Hudson II born May 20, 2016); Stevens v. Abbott Laboratories, No. 22-LA-0499 (Cir. Ct. St. Clair County) (Alison Stevens/estate of Liv Haydon Stevens born April 26, 2020); Washington v. Mead Johnson & Co., No. 22-LA-0113 (Cir. Ct. St. Clair County) (M'Linda Brown/estate of Ayva Florence born April 27, 2012); and Livorsi v. Mead Johnson & Co., No. 22-LA-1031 (Cir. Ct. St. Clair County) (Suzanne Livorsi/on behalf of Vincent Livorsi born May 20, 2017). Three of the infants were born in states other than Illinois (Missouri, Louisiana, and New York), while the other two infants were born in Illinois (Du Page County and Sangamon County).[5] Mead Johnson moved to dismiss the claims of the nonresident

---

[4]The record reveals that plaintiff infant Paislee Pineiro was born in St. Louis, Missouri. Mead Johnson is not a defendant in the Missouri case and, thus, made no *forum non conveniens* argument regarding infant Pineiro.

[5]We note that in its *forum non conveniens* order, the circuit court indicated that only one plaintiff infant was born in Illinois but review of the record reveals that two of the infants in the prioritized plaintiff pool were born in Illinois.

25

plaintiffs in favor of a more convenient fora pursuant to Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018) and the doctrine of interstate *forum non conveniens*. Mead Johnson argued that the more convenient fora were the states or Illinois counties in which the nonresident infants were born, allegedly consumed Mead Johnson formula products, and were diagnosed with and treated for NEC. Abbott moved to transfer the intrastate cases to Lake County, Illinois. It also argued that a more convenient fora for the interstate cases were the states in which the plaintiff infants were born.

¶ 65 The circuit court found that the defendants failed to establish that witnesses or the defendants would be inconvenienced by a trial in Illinois, that there was no connection to Illinois, and that a trial in Illinois would be an unfair burden to the citizens of Illinois or to St. Clair County. Concluding that the balance of private and public interest factors did not strongly favor the states where the infants were born over Illinois or St. Clair County, the circuit court denied the defendants' motions to transfer or dismiss for *forum non conveniens*. On appeal, the defendants argue that the circuit court abused its discretion by denying its motion (1) to dismiss the cases in Illinois for refiling in the states where the plaintiff infants were born or (2) alternatively, to transfer the cases from St. Clair County to the Illinois counties where the infants were born.

¶ 66 After the appeal was fully briefed, the defendants filed motions to cite *Adamian v. Balash*, 2024 IL App (1st) 231876, and *Smith v. Walgreen Co.*, 2024 IL App (5th) 240394, as supplemental authority in support of their *forum non conveniens* arguments, which we allowed. The cases, as well as the plaintiffs' response, will be discussed below.

¶ 67 "*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). The doctrine of *forum non conveniens* assumes the plaintiff's

26

chosen forum is a proper venue for the action and that there are additional proper venues for the action. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 182 (2003). " '*Forum non conveniens* is applicable when the choice is between interstate forums as well as when the choice is between intrastate forums \*\*\*.' " *Benedict v. Abbott Laboratories, Inc.*, 2018 IL App (1st) 180377, ¶ 27 (quoting *Glass v. DOT Transportation, Inc.*, 393 Ill. App. 3d 829, 832 (2009)). When considering a dismissal motion based on interstate *forum non conveniens*, the issue is "whether Illinois is an appropriate state in which to litigate the controversy." *Lambert v. Goodyear Tire & Rubber Co.*, 332 Ill. App. 3d 373, 377-78 (2002). When considering a dismissal motion based on intrastate *forum non conveniens*, the issue is "whether the case is being litigated in the most convenient county." *Id.* at 378. The same principles apply equally to a dismissal motion based on interstate *forum non conveniens* or a dismissal motion based on intrastate *forum non conveniens*. *Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723, 741 (2005).

¶ 68     A circuit court's "decision on a *forum non conveniens* motion will be reversed only if it can be shown that the [circuit] court abused its discretion in balancing the various factors at issue." *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). A circuit court "abuses its discretion only if it acts arbitrarily without the employment of conscientious judgment, exceeds the bounds of reason and disregards recognized principles of law, or if no reasonable person would take the position adopted by the [circuit] court." *Campbell v. Autenrieb*, 2018 IL App (5th) 170148, ¶ 26.

¶ 69     In deciding a motion on the basis of *forum non conveniens*, "the circuit court must balance private interest factors affecting the litigants and public interest factors affecting the administration of the courts." (Internal quotation marks omitted.) *Wylie v. Schaefer*, 2021 IL App (5th) 200425, ¶ 14. The burden is on the defendant to show that the relevant private and public interest factors

27

strongly favor the defendants' choice of forum over the plaintiffs' choice of forum. *Langenhorst*, 219 Ill. 2d at 444. When deciding a *forum non conveniens* motion, the circuit court is "to include *all* of the relevant private and public interest factors in their analyses." (Emphasis in original.) *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 24.

¶ 70 Every motion to transfer or dismiss based on *forum non conveniens* must be considered as unique on its facts and must be decided pursuant to an "individualized, case-by-case consideration of convenience and fairness." (Internal quotation marks omitted.) *Wylie*, 2021 IL App (5th) 200425, ¶ 14 (citing *Langenhorst*, 219 Ill. 2d at 443, and *Gridley*, 217 Ill. 2d at 168). With these principles in mind, we consider whether the circuit court abused its discretion in denying the defendants' *forum non conveniens* motions.

¶ 71                    1. *Defendants'* Forum Non Conveniens *Arguments*

¶ 72 The defendants contend that the circuit court erred in finding that neither Mead Johnson nor Abbott had demonstrated that their proposed transferee forums were more convenient than plaintiffs' chosen forum. The crux of the defendants' argument is that each case is more conveniently litigated in the forum where the infants were born instead of Illinois or St. Clair County.

¶ 73                         a. Plaintiffs' Choice of Forum

¶ 74 "Before weighing the relevant factors, a court must first decide how much deference to give to a plaintiff's choice of forum." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009). "This deference to plaintiff's choice of forum is commonly referred to as an unequal balancing test." *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 366 (1983). Where neither the plaintiffs' residences nor the site of the injuries is located in the chosen forum, the plaintiffs' choice of forum receives "somewhat less deference." *First American Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002).

28

Here, the circuit court reasonably concluded that the plaintiffs' choice of forum was entitled to somewhat less deference but, nevertheless, found that this factor weighed slightly in favor of the plaintiffs' chosen forum.

¶ 75                           b. Private Interest Factors

¶ 76    "The private interest factors include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive." (Internal quotation marks omitted.) *Wylie*, 2021 IL App (5th) 200425, ¶ 14.

¶ 77    Turning to the private interests, we find that the circuit court did not abuse its discretion in concluding that the convenience of the parties did not weigh strongly in favor of transfer or dismissal. To meet its burden, "[t]he defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties." *Langenhorst*, 219 Ill. 2d at 444. As our supreme court noted in *Guerine*, "the convenience of the parties depends in large measure upon the context in which we evaluate their convenience." *Guerine*, 198 Ill. 2d at 526.

¶ 78    The defendants failed to meet their burdens. Mead Johnson consistently maintains that it is too early at this stage in the litigation to determine where all of the potential witnesses are located. Regarding the Illinois plaintiff infants, Mead Johnson contends that although they live in Illinois, they are located "far from St. Clair County."

¶ 79    Although Abbott is headquartered in Illinois, it contends that Illinois is an inconvenient forum for the interstate cases. In its written order, the circuit court recognized that in a

*forum non conveniens* analysis, while the fact that the defendant's principal place of business is located in the plaintiff's chosen forum is not dispositive, it is an acceptable factor to be weighed. *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 276 (2011). In the two cases in which Abbott seeks intrastate transfer, Abbott maintains it submitted evidence to the circuit court that essential third-party witnesses are not located in St. Clair County. Abbott argues that Du Page County (where infant Vincent Livorsi was born) and Sangamon County (where infant Ayva Florence was born) are far closer to Lake County than to St. Clair County and, thus, more convenient for Abbott. While perhaps that is true, that is only half of Abbott's burden, as Abbott also must show that "another forum is more convenient to all parties." *Langenhorst*, 219 Ill. 2d at 444.

¶ 80    As to the relative ease of access to sources of testimonial and documentary evidence, we find that the circuit court did not abuse its discretion in finding this factor did not weigh strongly in favor of transfer or dismissal. The circuit court noted that the defendants had not argued that access to documentary evidence would be inconvenient in the plaintiffs' chosen forum. In fact, both defendants asserted in open court that they would bring their documents to any forum in which the cases were tried. The circuit court noted, however, that ease of access to testimonial evidence posed difficulties given the locations of the potential witnesses.

¶ 81    On appeal, Mead Johnson acknowledges it has not identified every potential third-party witness at this stage of litigation, arguing it is prohibited from contacting the plaintiffs' healthcare providers, citing *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 606 (1986) (defense counsel cannot engage in communication with plaintiff's treating physician other than by court-authorized discovery methods). The record in the present case belies Mead Johnson's argument, as the plaintiffs have supplied medical authorizations to the defendants, allowing it to obtain the

30

plaintiffs' medical records and discover the names and locations of the treating healthcare providers as well as the hospitals where the infants were treated.

¶ 82    In its supplemental response to the plaintiffs' interrogatories, Abbott included a chart of 33 healthcare providers whom Abbott "would likely call at trial." Abbott maintains that, based on publicly available information, 28 of these healthcare providers continue to live or work in the proposed alternative forums where the infants were treated. Abbott acknowledges that at this stage of litigation, it has not identified every potential third-party witness. However, citing *Gridley*, Abbott insists it does not have a burden to do so. See *Gridley*, 217 Ill. 2d at 167 ("[R]equiring extensive investigation prior to deciding a *forum non conveniens* motion would defeat the purpose of the *forum non conveniens* motion."). To the contrary, Abbott argues that a defendant need only " 'provide enough information to enable the [court] to balance the parties' interests.' " *Id.* at 168 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)). While Abbott correctly states the law, *Piper* is distinguishable. In *Piper*, the court of appeals had suggested that the defendants, who were seeking dismissal based on *forum non conveniens*, were required to "submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Piper*, 454 U.S. at 258. Our United States Supreme Court found that such detail was not necessary. *Id.* In the instant matter, no such detail was required by the circuit court. Instead, the circuit court found that Abbott failed to provide "evidence of inconvenience in the form of an affidavit *or other evidentiary proof*" to support its *forum non conveniens* claim, without which the circuit court was invited to merely speculate on the inconvenience of the witnesses. (Emphasis added.) Thus, while the defendants were not required to provide an exhaustive list of potential third-party witnesses at this stage of the litigation,

31

they were required to " 'provide enough information to enable the [court] to balance the parties' interests.' " *Gridley*, 217 Ill. 2d at 168 (quoting *Piper*, 454 U.S. at 258).

¶ 83   The plaintiffs countered with evidence identifying a number of treating healthcare providers for each infant subject to the *forum non conveniens* motion. In its omnibus response in opposition to Abbott's *forum non conveniens* motion, the plaintiffs included the names of healthcare providers who had treated the two Illinois infants, the current locations of the providers, and a summary of the specific treatment the providers administered. The record reveals these healthcare providers are located in many different states, including California, Washington, Nevada, Florida, Missouri, New York, North Carolina, Connecticut, and Alabama. The circuit court made a factual finding that the healthcare providers were scattered throughout the country and in various counties in Illinois. When the witnesses are so scattered, there is no single forum that enjoys a predominant connection to the litigation. *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 834 (2006).

¶ 84   Of course, this finding is not dispositive of the issue. "[W]hen a court considers a *forum non conveniens* motion in a non-medical malpractice case, the location of a plaintiff's treatment facility or treating physician is 'not completely irrelevant,' but a court should be careful not to 'afford it undue weight.' " *Benedict*, 2018 IL App (1st) 180377, ¶ 48 (quoting *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008)). "By contrast, this court has previously found, in a product liability case, that it is important to consider the location of the witnesses and evidence relating to the design and manufacture of the product at issue." *Id.* ¶ 49.

¶ 85   Abbott contends that the business unit that produces and sells its specialized infant formula products is Abbott Nutrition located in Columbus, Ohio. Abbott further contends its relevant operations—those related to the research, development, design, processing, sourcing,

manufacture, sale, distribution, labeling, and marketing of preterm infant formulas and fortifiers—occur in or are directed from Ohio. Abbott has identified 16 individuals likely to have information relevant to this lawsuit, ranging from product research and medical safety to regulatory affairs, consumer relations, and product marketing, all of whom are located in Ohio. Similarly, Mead Johnson argues that any decisions regarding design, manufacture, marketing, and sales occurred in or was directed from its headquarters in Evansville, Indiana. The defendants' arguments, however, are counter to their assertions that the more convenient fora are those states and Illinois counties where the infants were born since the design and manufacture of the products at issue occurred outside of the states where the prioritized infants were born. Furthermore, the defendants fail to establish that access to these witnesses located in Ohio and Indiana would be more convenient in the states or Illinois counties where the infants were born as opposed to the plaintiffs' chosen forum.

¶ 86    Finally, both Abbott and Mead Johnson asserted to the circuit court that they would bring their current and retired employees, as well as any documentary evidence, to any forum where the litigation is tried. Thus, we find the circuit court did not abuse its discretion when it found that this factor did not weigh strongly in favor of transfer or dismissal.

¶ 87    Regarding the availability of compulsory process to secure the attendance of unwilling witnesses, we find that the circuit court did not abuse its discretion in finding this factor is neutral and, thus, did not strongly weigh in favor of transfer or dismissal. The defendants assert that because essential third-party witnesses sit beyond the circuit court's compulsory subpoena powers, the circuit court cannot compel unwilling, out-of-state witnesses to give testimony or produce documents. The defendants, however, fail to specify a single witness who would be unwilling to testify in the plaintiffs' chosen forum. Although the defendants contend that it is too early at this

stage in the litigation to make such a determination, the burden of proof remains with the defendants. See *Erwin*, 408 Ill. App. 3d at 277 (since the burden of proof lies with the defendant, a reviewing court is not at liberty to speculate about the whereabouts or unwillingness of a witness to testify at trial).

¶ 88     As previously noted, the circuit court made a factual finding based on the record that the healthcare providers were scattered throughout the country and in various counties in Illinois. Thus, the circuit court found that no single forum could solve the compulsory process problems. "Where the transfer to some other forum does not solve the compulsory attendance problem, the compulsory process factor is regarded as being neutral, and not strongly favoring transfer." *Id.* at 278.

¶ 89     Although the circuit court did not explicitly address the cost of obtaining the attendance of willing witnesses, we find this factor to be neutral as the defendants have each committed that they would bring their current and retired employees, as well as any documentary evidence, to any forum where the cases are tried. Regarding the possibility of viewing the premises, we find this factor to be neutral as " 'the importance of this factor diminishes due to the fact that this case primarily concerns a products liability claim.' " *Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 772 (2009) (quoting *Ammerman*, 379 Ill. App. 3d at 891). Based on the foregoing, we cannot conclude that the circuit court abused its discretion in finding that the private factors did not strongly weigh in favor of transfer or dismissal.

¶ 90                                c. Public Interest Factors

¶ 91     "The public interest factors include the interest in having local controversies decided locally, the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin, and the unfairness of imposing jury duty upon residents of a

34

county with no connection to the litigation." (Internal quotation marks omitted.) *Wylie*, 2021 IL App (5th) 200425, ¶ 14.

¶ 92    Regarding the interest in having local controversies decided locally, we find that the circuit court did not abuse its discretion in finding this factor did not strongly weigh in favor of transfer or dismissal. Mead Johnson argues that Illinois has no real interest in the litigation, while the states or counties where the infants were born have a stronger interest. Abbott similarly argues that the residents of the communities where the infants were born and treated have by far the greatest interest in the adequacy of the care, treatment, and nutrition provided to these infants in their local hospitals.

¶ 93    The circuit court noted that the cases center around product liability claims as opposed to medical malpractice claims. The general rule that the county where an injury occurred has a strong interest in the outcome of litigation "does not necessarily apply to cases involving complex products liability issues." *Hefner v. Owens-Corning Fiberglas Corp.*, 276 Ill. App. 3d 1099, 1106 (1995). Courts have long recognized that

"in cases where the primary issue centers around a products liability claim, the site of the accident caused by the allegedly defective product is less important because any local interest is largely supplanted by a more general interest in resolving a claim concerning an allegedly defective product and jury views of the accident site are generally unnecessary. See, *e.g.*, *Brown v. Cottrell, Inc.*, 374 Ill. App. 3d 525, 534 (2007) (noting that products liability claims 'are not inherently local in flavor' and finding that a jury view of the accident site was not warranted); [*Woodward*, 368 Ill. App. 3d at 836 (quoting *Hefner*, 276 Ill. App. 3d at 1106)] ***; *Hinshaw v. Coachmen Industries, Inc.*, 319 Ill. App. 3d 269, 278 (2001) (finding that due to the inherent nature of products liability claims 'any local

35

interest *** is largely supplanted by a more general interest in the safety' of the allegedly defective product and that the importance of a jury view was 'diminished')." *Ammerman*, 379 Ill. App. 3d at 886-87.

¶ 94 Regarding the interstate cases, the circuit court recognized that while the residents of the states and counties where the plaintiff infants were born have an interest in the cases, Illinois also has an interest as Abbott is headquartered in Illinois. See *Vivas*, 392 Ill. App. 3d at 661 (in a products liability case, the forum where the defendant corporation is headquartered has "an interest in ensuring the safety of the products that its corporations build and ship throughout the world"). The circuit court found that not only did Mead Johnson sell its products in Illinois, it also has the exclusive WIC contract with the State of Illinois such that Illinois residents who are beneficiaries of the WIC program can select only Mead Johnson products for their infants. Regarding the intrastate cases, the circuit court found that because the defendants distribute and sell their products in St. Clair County to St. Clair County residents, these residents also have an interest in these cases. Accordingly, the circuit court did not abuse its discretion in finding these factors were neutral.

¶ 95 Regarding the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin, we do not find that the circuit court abused its discretion in finding this factor weighed in favor of the plaintiffs' choice of forum. The circuit court found that neither Abbott nor Mead Johnson addressed this factor at the court below. Inexplicably, the defendants likewise fail to address this factor on appeal. Although the defendants list the public interest factors in their briefs, they fail to make an argument that the factor weighs in favor of transfer or dismissal. See *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule."). Under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), points

36

not argued in the appellant's brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (Internal quotation marks omitted.) *Vancura*, 238 Ill. 2d at 369.

¶ 96    Regarding the unfairness of imposing jury duty upon residents of a county with no connection to the litigation, we find that the circuit court did not abuse its discretion in finding this factor did not strongly weigh in favor of transfer or dismissal. The defendants maintain that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). However, the circuit court found that the defendants failed to show there was no connection to Illinois. The circuit court rejected Abbott's contention that because "Abbott Nutrition" is based in Columbus, Ohio, then Columbus Ohio, and not Illinois, has a significant connection to the claims in this litigation. The circuit court found that in addition to Abbott's corporate headquarters being located in Illinois, the Abbott Research Center is located in Abbott Park, Illinois. Moreover, Abbott holds its Abbott Park headquarters out to the public as the location of Abbott Nutrition, and Abbott's website lists the location of "Abbott Nutritional Products" as 100 Abbott Park Road in Abbott Park, Illinois. The circuit court likewise rejected Mead Johnson's contention that Illinois does not have a significant connection to the claims in this litigation, noting that three of the five infants were born prior to 2018 while Mead Johnson admits its headquarters were still located in Illinois.

¶ 97    The circuit court determined there were strong policy reasons why the cases were connected to Illinois and St. Clair County, noting that while the alleged injuries may have incurred in other states or a different county, "Illinois also has an interest in deciding whether a corporation, whose principal place of business and headquarters are here, sent forth a product that [may have] injured citizens across the nation." *Benedict*, 2018 IL App (1st) 180377, ¶ 62. We agree.

37

Accordingly, we cannot conclude that the circuit court abused its discretion in finding that the public factors did not strongly weigh in favor of transfer or dismissal.

¶ 98    In a joint motion to cite supplemental authority, the defendants maintain that in *Adamian*, 2024 IL App (1st) 231876, the First District expressly weighed the relevant private and public interest factors and determined that the doctrine of *forum non conveniens* required the claims arising from medical treatment to be litigated where the treatment took place, even though the plaintiffs had elected to sue in Cook County. The plaintiffs counter that *Adamian* involved medical malpractice allegations where medical witnesses were central, unlike the product liability case at issue in the instant case. Applying the aforementioned *forum non conveniens* principles, we find the plaintiffs' argument persuasive.

¶ 99    In a subsequent joint motion to cite supplemental authority, the defendants assert that this court's recent decision in *Smith*, 2024 IL App (5th) 240394, is relevant to their *forum non conveniens* arguments and, presumably, that a similar outcome is dictated. In *Smith*, a special administrator of the decedent's estate brought a negligence action against, *inter alia*, the operator of the drugstore, alleging the operator had improperly filled a prescription for oral prednisone. *Id.* ¶ 4. This court reversed the circuit court's denial of the defendant's *forum non conveniens* motion in the negligence case and directed that the case be transferred to Christian County, where the relevant conduct and injury occurred. *Id.* ¶ 39. We reject the defendants' suggestion that *Smith* is dispositive as each case must be decided on an "individualized, case-by-case consideration of convenience and fairness." (Internal quotation marks omitted.) *Wylie*, 2021 IL App (5th) 200425, ¶ 14.

¶ 100   Upon review of the record, we determine that the circuit court carefully balanced the requisite private and public factors, and thus, we find that the circuit court did not abuse its

discretion in finding that the defendants failed to demonstrate that the balance of relevant interest factors strongly favored transfer or dismissal.

¶ 101                                    III. CONCLUSION

¶ 102   For the foregoing reasons, we affirm the circuit court's dismissal of Mead Johnson's motion to dismiss for lack of jurisdiction, and we affirm the circuit court's dismissal of the defendants' venue and *forum non conveniens* motions.

¶ 103   Affirmed.

| Circuit Court No. | Plaintiffs-Appellees | Defendants-Appellants |
|---|---|---|
| 21-L-0981 | Amanda Toles, on Behalf of Herself and Her Minor Child Z.T | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |
| 22-LA-0057 | Keshonna Greenwade, Individually and as Next Friend and Special Administrator of the Estate of Keshon Brownlow | Abbott Laboratories and Abbott Laboratories, Inc. |
| 22-LA-0113 | Megan Washington, on Her Own Behalf and on Behalf of Her Minor Child Chamaria Calameases; M'Linda Brown, on her own behalf and as representative of the estate of Ayva Florence; Daniell Burke, on her own behalf and on behalf of her minor child Nevaeh Burke; Savannah Greenia, on her own behalf and on behalf of her minor child Leo Greenia-White; and Adrianna Holloway, on her own behalf and on behalf of her minor child Darealis Holloway | Mead Johnson and Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |
| 22-LA-0217 | Jessica Lynch, on Her Own Behalf and as Representative of the Estate of Paislee Pineiro | Abbott Laboratories and Abbott Laboratories, Inc. |
| 22-LA-023l | Lakita Oliphant, on Behalf of Herself and Her Minor Child Q.J; Clarissa Greear, on Behalf of Herself and Her Minor Child B.H.; and Christina Ferrer, on Behalf of Herself and Her Minor Child B.M. | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |
| 22-LA-0243 | Travis Helms and Jessica Helms, on Their Own Behalf and as Representative of the Estate of Emmalynn Helms | Abbott Laboratories and Abbott Laboratories, Inc. |

| | | |
|---|---|---|
| 22-LA-0244 | Tiffany Foshee, as Mother and Next of Friend for Deceased Minor Child Elizabeth East | Abbott Laboratories and Abbott Laboratories, Inc. |
| 22-LA-0295 | H.H., a Minor, By and Through His Natural Mother and Next Friend, Suzanne Harala | Mead Johnson & Company LLC; Mead Johnson Nutrition Company; Abbott Laboratories; and Abbott Laboratories, Inc. |
| 22-LA-0314 | Ashley Peer, Individually and as Next Friend and Special Administrator of the Estate of Ariyah Mae Lee | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; Abbott Laboratories; and Abbott Laboratories, Inc. |
| 22-LA-0403 | Francesca Rincon, as Mother and Next of Friend for Deceased Minor Child Ulises Rincon; Ayona Thomas, as mother and next of friend for deceased minor child Dream Thomas | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 22-LA-0464 | Edlyenis Washington, as Mother and Next of Friend for Deceased Minor Child Andrew Rosa | Abbott Laboratories and Abbott Laboratories, Inc. |
| 22-LA-0645 | Khashiana Volcy, Next Friend and Special Administrator of the Estate of Zyaire Florence | Abbott Laboratories; and Abbott Laboratories, Inc.; Mead Johnson & Company; and Mead Johnson Nutrition Company |
| 22-LA-0498 | Taryn Thomas, Individually and as Special Administrator of the Estate of Queen Brewer, Deceased;[6] Chandra Crowder, Individually and as Special Administrator of the Estate of Heartlea Crowder Gregg, Deceased; Tasha Jones, Individually and as Special Administrator of the Estate of Michael Gonzales, Deceased; Solita Savoy, as mother and next of friend for minor child Jasmine Harris; Kayla Ramsey, as mother and next of friend for minor | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |

[6]Taryn Thomas (Estate of Queen Brewer) was voluntarily and individually dismissed as a plaintiff on October 27, 2023. The record does not indicate that the remaining 12 plaintiffs were dismissed.

41

child Rizik Hussein; Jennifer Gerhart, as mother and next of friend for minor child Piper Gerhart; Ashlie Zartman, as mother and next of friend for minor child Baylee Rudisill

| | | |
|---|---|---|
| 22-LA-0499 | Alison Stevens, Individually and as Next Friend and Special Administrator of the Estate of Liv Haydon Stevens | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 22-LA-0785 | Clinton Jones III; Delfina Castelan and Oscar Gonzalez, Next Friends and Special Administrators of the Estate of Yeray Gonzalez; Briana Hudson and Daniel Hudson, Next Friends and Special Administrators of the Estate of Daniel Hudson II; Mykel De La Serna, Next Friend and Special Administrator of the Estate of Luke De La Serna; Stephanie Massey and Timothy Massey, Next Friends and Special Administrators of the Estate of Lane Massey; Samantha Qualls, as Special Administrator of the Estate of Samuel Qualls; and Keith Qualls, Next Friend and Natural Parent of Samuel Qualls | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company; and Mead Johnson Nutrition Company |
| 22-LA-0786 | Shaneekqua Brown, Individually and as Special Administrator of the Estate of Faith Brown, Deceased; Livena Hyde Jones, as Mother and Next Friend for Minor Child, O'Niki Williams; Karlee Robinson, Individually and as Special Administrator for the Estate of Rayleigh Peavey, Deceased; Keshia Parker, Individually and as Special Administrator of the Estate of Kai Ford; Amanda Nemec, Individually and as Special Administrator for the Estate of Robert Nemec; Guliet | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |

| | | |
|---|---|---|
| | Prince, Individually and as Special Administrator of the Estate of Faith Daniels, Deceased; Keanna Hall, as Mother and Next Friend for Minor Child, Miracle Crosby; and Martha Roca, as Mother and Next Friend for Minor Child Jacob Roca | |
| 22-LA-0826 | Laquanda Ousley-Saygo, Individually and as Special Administrator of the Estate of Salaih Saygo, Deceased; James Mayer, Jr.; Terell J. Thomas; Jaquez M. McClendon-Jackson; Kayla Wade, Individually and as Special Administrator of the Estate of Waylon Wade, Deceased | Abbott Laboratories, Abbott Laboratories, Inc., Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company |
| 22-LA-0907 | Jaclyn Poindexter and Justen Walton, Next Friends and Special Administrators of the Estate of Xena Raylee Poindexter; Sara Flores and Eduardo Flores, Next Friends and Special Administrators of the Estate of Serenity Flores; and Christina Campos and Felis Perez, Next Friend and Special Administrators of the Estate of Nikolas Christopher Perez | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 22-LA-0984 | Cheryl Soares, Individually and as Administrator Ad Prosequendum of the Estate of Paris Soares, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 22-LA-1031 | Suzanne Livorsi, on Her Own Behalf and on Behalf of Her Minor Child Vincent Livorsi; Kaitlin Auger, on Her Own Behalf and on Behalf of Her Minor Child Leland Auger;[7] Enchantra Baldwin, on Her Own Behalf and on Behalf of Her Minor Child Nicholas Carter Jr.; and Kayla Corn, on Her Own Behalf and as the | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |

---

[7]Kaitlin Auger (on behalf of minor Leland Auger) was voluntarily and individually dismissed as a plaintiff on June 1, 2023.

|  |  |  |
|---|---|---|
|  | Representative of the Estate of Aaron Williams |  |
| 22-LA-1051 | Temika Brackins, as Mother and Next Friend for Minor Child Jayden Brackins; Delvin Steele, Individually and as Special Administrator of the Estate of Destiny Cockrell, Deceased; Audra Jones, Individually and as Special Administrator of the Estate of Wesley Darnell Jones Jr., Deceased;[8] and Olawande Ajayi, Individually and as Special Administrator of Kayleb Ajewole, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 22-LA-1054 | Monotreyah Harper, Next Friends and Special Administrators of the Estate of Emontrey Dnae Farris; Tyesha Hazelwood and Johnathan Hopkins, Next Friends and Special Administrators of the Estate of Zoie Hopkins; and Ashley Ortega, Next Friend and Special Administrators of the Estate of Abel James Ortega III | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company; and Mead Johnson Nutrition Company |
| 22-LA-1071 | John Post, on His Own Behalf and on Behalf of His Minor child, John Post Jr. | Abbott Laboratories and Abbott Laboratories, Inc. |
| 22-LA-1075 | Bria Godfrey, on Her Own Behalf and on Behalf of Her Minor Child E'Layna Andrews; Krystal Mundy, on Her Own Behalf and as Representative of the Estate of Charles Young IV;[9] Lacoe Fulton; and Sade Horton | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |
| 22-LA-1118 | Felicia Miller, Individually and as Special Administrator of the Estate of Andrew Miller Jr., Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and |

---

[8]Audra Jones (estate of Wesley Darnell Jones Jr.) was voluntarily and individually dismissed as a plaintiff on August 23, 2024.

[9]Krystal Mundy (estate of Charles Young IV) was voluntarily and individually dismissed as a plaintiff on August 11, 2023.

| | | Mead Johnson Nutrition Company |
|---|---|---|
| 23-LA-0002 | Marcie Pagan, on Behalf of Herself and Her Minor Child, J.P. | Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Abbott Laboratories |
| 23-LA-0011 | Tammy Long, Individually and as Special Administrator of the Estate of Renard Edwards, Jr., Deceased; Taisha Anderson, Individually and as Special Administrator of the Estate of Taylen Rhodes, Deceased; Elizabeth Gomes, as Mother and Next Friend for Minor Child Gabrielle Gomes; Seannah Balzer, Individually and as Special Administrator of the Estate of Troy Wilson, Deceased; Sharnice Gibson, Individually and as Special Administrator of the Estate of Joshua Williams, Deceased; Alexis Paschell, as Mother and Next Friend for Minor Child Armarion Paschell; and Tychelle Blanton, Individually and as Special Administrator of the Estate of Elijah Blanton, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0016 | Lisa Bagnall, Individually and as Administrator of the Estate of Hudson Bagnall, Deceased; Loki Doss, a Minor, By His Mother Tabitha Doss; Tabitha Doss, Individually; Latrenda Leslie, Individually and as Administrator of the Estate of Nylia Thompson, Deceased; Nakia Taylor, Individually and as Special Administrator of the Estate of London Taylor; and Jo'Shandria White, Individually and as Special Administrator of the Estate of Khelil White, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |

45

| | | |
|---|---|---|
| 23-LA-0111 | Ladonya Newman, Individually and as Special Administrator of the Estate of Gia Undreia-Niccole, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0146 | Michelle Watson, Individually and as Mother and Next Friend of Kaden Ketchum, a minor | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0196 | Jayla Dougherty, Individually and as Special Administrator of the Estate of Ja'Hani Markes Dougherty, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0202 | Tamala Johnson, Individually and as Mother and Next Friend of Kyla McCracken, a Minor and Riley McCracken, a Minor | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0220 | Winnifred Glay; Benjamin Whitten, as Father and Next Friend of Catherine Whitten; Marquis Gamble; Dareion Carter; Faridaliza Dias, as Mother and Next Friend of Aedan Jimenez-Diaz; Chiquila Pirtle, Individually and as Special Administrator of the Estate of Jayson Pirtle; Deleah Talley as Mother and Next Friend of Dametria Goodall; and Abeygail Akers, Individually and as Special Administrator of the Estate of Viviana Garcia, Deceased | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |
| 23-LA-0434 | Jackson Thornhill and Ann Hohnadel | Abbott Laboratories; Abbott Laboratories, Inc.; Mead Johnson & Company, LLC; and Mead Johnson Nutrition Company |

*Toles v. Mead Johnson & Co.*, 2025 IL App (5th) 231205

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 21-L-0981; the Hon. Patrick R. Foley, Judge, presiding. |
| **Attorneys for Appellant:** | Joel D. Bertocchi, of Akerman LLP, and Anthony J. Anscombe and Darlene K. Alt, of Steptoe & Johnson, LLP, both of Chicago, and Donald M. Flack, of Armstrong Teasdale LLP, of St. Louis, Missouri, for appellants Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company.<br><br>Linda T. Coberly and Stephen V. D'Amore, of Winston & Strawn LLP, and Thomas L. Kilbride and Adam R. Vaught, of Croke Fairchild Duarte & Beres, both of Chicago, and W. Jason Rankin and Emilee M. Bramstedt, of HeplerBroom LLC, of Edwardsville, for other appellant. |
| **Attorneys for Appellee:** | Ashley Keller and Ben Whiting, of Keller Postman LLC, of Chicago, Tor A. Hoerman, of TorHoerman Law LLC, of Edwardsville, and David Cates, of Cates Law Firm, LLC, of Swansea, for appellees. |